## CARTER v. BROWN.

### Opinion delivered October 21, 1918.

1. NEGLIGENCE—QUESTION FOR JURY.—In an action against the driver of an automobile by an occupant of another car, to recover for personal injuries received in a collision between the two cars, it was a question for the jury whether plaintiff's injuries were caused by the concurring negligence of defendant and the driver of the other car, and whether plaintiff was guilty of contributory negligence.

2. SAME—DRIVING AUTOMOBILE.—Acts 1911, c. 134, providing that "if the rate of speed of a motor vehicle * * operated on any public highway in this State in going around a corner or curve in a highway where the operator's view of the road traffic is obstructed exceeds 6 miles an hour, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle is running at a rate of speed greater than is reasonable," etc., should be considered by the jury in determining whether one or both of two colliding cars were being negligently driven at the time plaintiff was injured.

3. SAME—USE OF HIGHWAY BY AUTOMOBILE DRIVER.—It is the duty of drivers of automobiles upon a public highway to exercise ordinary care to avoid injury to other travelers.

4. HIGHWAYS—DUTY OF TRAVELERS.—While it is a general rule that travelers in meeting shall each bear or keep to the right, this rule is not inflexible, as emergencies may arise requiring one to keep to the left in the particular case.

5. SAME—AUTOMOBILE—DUTY TO USE CARE.—Drivers of automobiles are required to use care commensurate with the dangers to be anticipated from the use of such vehicles.

6. NEGLIGENCE—WHEN NOT IMPUTED.—Where plaintiff was riding for pleasure in a car over which she had no control and which collided with a car driven by defendant, and was injured in such collision, the negligence of the driver of the first mentioned car can not be imputed to plaintiff.

7. SAME—CONTRIBUTORY NEGLIGENCE.—While the negligence of the driver of an automobile cannot be imputed to one who is riding merely as his guest, it is the duty of the guest to exercise ordinary care for his or her safety, and a failure to exercise such care which contributes to the injury will constitute contributory negligence.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*Rhoton & Helm,* for appellant.

1. There was testimony showing negligence and it was error to instruct a verdict. 89 Ark. 522, 524; *Ib.* 372. There was no evidence that plaintiff in any way contributed to her injuries. She had a right to sue either or both joint feasors. 61 Ark. 381; Bishop on Non-Cont. Law, par. 18; Wharton, Law of Negl. § 395; 183 S. W. 467.

2. *Prima facie* negligence on the part of the driver of defendant's automobile was established. Acts 1911, No. 134; 2 R. C. L. 1184; 96 Atl. 163.

3.    Where one is riding as a guest of another and is injured by the defendant and contributory negligence is alleged, the negligence of defendant is not irrefutable to the injured party where he or she has no authority or control over the person with whom riding.   72 Ark. 572; 75 *Id*. 30; 102 *Id*. 355; 112 *Id*. 421; 123 *Id*. 557; 126 *Id*. 337. See also 1 Thompson on Negl. § 502; 1 Sh. & Redf. Neg. § 66; 161 N. W. 715-717; 6 Rob. (N. Y.) 82; 47 N. Y. Supp. 454; 45 *Id*. 124; 164 Pac. 385-386; 145 N. W. 923; 51 Fed. 177; 16 L. R. A. 800; 8 L. R. A. (N. S.) 597; 36 S. E. 750; 8 L. R. A. (N. S.) 618; L. R. A. 1917 A. 543; 96 Atl. 163.

4.    The court erred in giving defendant's instruction No. 3.   68 Ark. 444; 102 *Id*. 137; 96 Atl. 54; 155 S. W. 439. See also L. R. A. 1915 B. 953; 16 L. R. A. (N. S.) 424; 8 *Id*. 597; 69 So. 626.

5.    The following cases are directly in point on the law and facts here. 165 N. W. 435; 198 S. W. 1117; 91 S. E. 632; 164 Pac. 120; 163 N. W. 824; 164 *Id*. 447; 165 *Id*. 30; 101 Atl. 45; 102 *Id*. 283; 165 Pac. 1005; 168 *Id*. 335; 198 S. W. 150; 163 N. W. 298; L. R. A. 1917 F. 253; 89 S. E. 753 and many others.

6.    Each of plaintiff's instructions should have been given as they correctly state the law.   123 Ark. 548-557; 102 *Id*. 534; 118 *Id*. 515; 127 Ark. 332.   See also 116 U. S. 366; 118 Ark. 515; 127 *Id*. 332; Acts 1911, p. 101, etc.

*Mehaffy, Reid, Donham & Mehaffy*, for appellee.

1.    Brown was not guilty of negligence.   1 Thompson on Negl. 4.   It was the duty of both drivers to drive to the right.

2.    One operating an automobile has the right to act upon the assumption that every one he meets will exercise ordinary care and obey the law.   2 R. C. L.

3.    Even if guilty of negligence in driving rapidly, this was not the proximate cause of the injury.

4.    The doctrine of imputed negligence applies.   1 Thompson on Negl. § 506; 8 *Id*. 84; Sh. & Redf. on Negl.

§ 65 A.; 75 Ark. 30; 102 *Id.* 355. Plaintiff knew they were driving on the wrong side of the road, going around a curve; she knew it was dangerous and that they were violating the law, and yet she made no objections and was guilty of negligence. 3 Elliott on Railroads 1174; 114 Pa. 643; 8 Atl. 379; 6 L. R. A. 143; 32 Atl. 967; 27 N. E. 339; 193 Ill. App. 387; 112 N. E. 251; 24 *Id.* 449; 44 Fed. 574; 17 N. E. 202; 43 *Id.* 667; 18 S. W. 2; 11 *Id.* 127; 63 N. E. 315; 64 Pac. 624; 76 S. W. 973; 78 *Id.* 284; 200 *Id.* 123. A verdict was properly directed.

WOOD, J. On Sunday afternoon of December 24, 1916, Jeff Brown, a planter living at Woodson, Arkansas, left his home about one o'clock for Little Rock. He went in his car, a six-cylinder Buick. In the car with him were his chauffeur, F. L. Oats, his wife and daughter, and another lady. Brown and his wife and daughter were on the back seat and Oats, who was driving the car, and Mrs. Annie Agnes were on the front seat. On the same day Gardner Oliphint, a man by the name of Jennings, a Miss Carter and a Miss Wiley left Little Rock in a Ford car for a drive, for mutual pleasure, on the road leading from Little Rock to Pine Bluff. The car in which Oliphint and his companions were riding was being driven by Oliphint. Brown's car, on the road from his home to Little Rock, was thus going north, while Oliphint's car was going south.

A collision of these cars occurred in the village of Sweet Home which caused personal injuries to Miss Carter, and she instituted this action against Brown, alleging that he "negligently, recklessly, carelessly, wantonly, willfully, and maliciously, without sounding any horn or giving any signal of warning of his approach, drove his automobile into and upon the automobile in which plaintiff was riding;" that his car was a large Buick, and was being driven at the rate of about 35 or 40 miles an hour; that, without heeding the signals of warning which were given him of the approach of the car in which the plaintiff was riding, Brown approached a sharp curve at a high

and excessive rate of speed, causing a collision resulting in the injuries to plaintiff. She asked for punitive damages in the sum of $5,000, and compensatory damages in the sum of $25,000.

The defendant, Brown, answered denying specifically all the allegations of the complaint as to negligence; he averred that the parties in the car in which plaintiff was riding were guilty of "negligence, carelessness and wrongful conduct," which was the sole cause of the collision and any injuries that the plaintiff may have sustained; that the negligence of the driver of the car in which the plaintiff was riding consisted in going at an unlawful rate of speed and in being on the wrong side of the road.

Witness Jennings, on behalf of the plaintiff, testified that Oliphint before the evening of the accident was not acquainted with Miss Wiley and Miss Carter; that he arranged to introduce them to Oliphint, and invited them to join him and Oliphint on a pleasure drive. Oliphint arranged to get the machine. The material portion of this witness' testimony with reference to the issues of negligence and contributory negligence, is substantially as follows: "Defendant's car was about 30 feet from the car in which plaintiff was riding (which for convenience we will hereafter designate as Oliphint's car) when witness first discovered it. It was coming at the rate of about 25 or 30 miles per hour." With reference to an automobile going east preparatory to turning south and one coming north preparatory to turning west, the view there was entirely obstructed by a store building. Oliphint sounded his horn just before he turned the corner to start south to the right, there where the accident occurred. He was running his car at the time about 5 or 6 miles an hour. Defendant, Brown, was on the inside of the road to his left, pretty close to the store; they were pretty nearly facing each other. They were facing each other but witness didn't remember how much to one side one or the other was, except that Oliphint's car was well in the right where

they collided. Oliphint was naturally trying to avoid a collision. Witness was asked if Oliphint "didn't try to turn his car out to the left and move it out quite a distance," and answered, "Well, I kind o' believe he did. I am not sure but it would naturally be that way. He was trying to avoid a collision. If Mr. Brown was coming on the right hand side, he was naturally turning to the left in order to avoid a collision. He hadn't been able to turn it very far until Brown struck him. It occurred well into the right of the curve. Brown knocked Oliphint's car out to the outside of the road by reason of the difference in the size of the cars and the weight."

Oliphint testified concerning the collision as follows: "The collision occurred at the store there at Sweet Home as you turn to go south to Pine Bluff. I was making the curve, the turn to go south, and I saw Mr. Brown's car 25 or 30 feet in front of me coming right at me from the south. I threw both my feet down just as tight as I could, and my brakes went on, and I threw my car that way to keep him from hitting me square in the face, and the collision occurred. Going toward Pine Bluff, my right was toward the west and south. I was on the inside of the right hand side of the road, going right around the road there; just in the right in the road as the curve is made. When I discovered his car coming at me, I immediately threw both of my feet down and threw my steering gear that way which threw my car out a little bit to the side to the east, to my left the way I was going, to sort of ward off the blow and to keep him from hitting me right square. The collision occurred about the middle of the road, I would say, or a little further to the east of the middle; something to the left of the center of the street, the way I was going south, or to the right of the center of the street the way he was coming north." Witness was going between 5 and 6 miles an hour as he was approaching the curve with a view of turning to the south. He sounded his buzz. Brown's car was running, when witness first saw it, 15 or 20 miles an hour; coming mighty fast right into

witness. There was no gong sounded by his car or by the one who was driving his car. There was an obstruction there by the way the store building is constructed, so that one cannot see going around that curve until he gets into the curve of the road. A plat was introduced and the witness testified to the location of the collision, pointing out on the plat where the same occurred showing that the collision occurred right in the curve immediately east of the northeast corner of the store. Oliphint demonstrated on the plat the respective locations of his and Brown's car and showed how the collision occurred. He testified in this connection: "I was hugging the inside like I should right there, following the tracks that are made there by automobiles." Witness explained why he turned his car to the left at the time of the collision as follows: "He was coming at me about 15 or 18 miles an hour and I threw my car to keep him from hitting me square in the face and so he would hit me sort of side blow, or sideways at least."

The testimony of the plaintiff and other witnesses tended to corroborate the testimony of Jennings and Oliphint as to the rate of speed the cars were traveling, and to the effect that no horn was sounded by Brown's car as he approached the curve. There was testimony tending to show that the road was the ordinary width of the country road. The traffic was heavy on holidays and on Sunday. The road was widest at the curve. One witness testified that it was a dangerous corner, "just about room for two cars to go around there."

The testimony of appellee and of several witnesses in his behalf, tended to show that his car on approaching the curve was making a speed of about 8 or 10 miles per hour and that the usual signal was given by sounding the horn; that Oliphint's car was being driven at a speed of 25 or 30 miles an hour at the time of the collision.

The testimony of plaintiff, and of Jennings and Oliphint, was to the effect that plaintiff and the other young lady were invited by Jennings to join him and Oliphint

in an automobile ride for their mutual pleasure; that plaintiff accepted the invitation; that Oliphint procured and was driving the car at the time the plaintiff received her injuries.

The plaintiff requested the court to grant several separate prayers for instructions, all of which the court refused. The defendant asked the court to instruct the jury to return a verdict in his favor, which request the court granted. The plaintiff duly objected, and excepted to these rulings of the court. Judgment was entered in favor of the appellee from which is this appeal.

1. It was a question for the jury to determine whether appellee's injuries were caused by the concurring negligence of Brown and Oliphint, or whether the proximate cause of her injuries was solely the negligence of Oliphint. It was also an issue for the jury as to whether the appellant was guilty of contributory negligence. The court erred in not submitting these issues to the jury.

Act 134 of the Acts of 1911 provides: ''If the rate of speed of a motor vehicle * * * * operated on any public highway in this State, in going around a corner or curve in a highway where the operator's view of the road traffic is obstructed, exceeds 6 miles an hour, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle * * * is running at a rate of speed greater than is reasonable, having regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of another.'' In determining whether one or both of the colliding cars at the time were being negligently driven, it was proper for the jury to take into consideration the above statute. *Bain* v. *Ft. Smith Light & Trac. Co.,* 116 Ark. 125; *Pankey* v. *Little Rock Ry. & Electric Co.,* 117 Ark. 237; *Ward* v. *Ft. Smith Light & Traction Co.,* 123 Ark. 548.

It is the duty of drivers of automobiles upon a public highway to exercise ordinary care, that is such care as a person of ordinary prudence and caution would exercise under the circumstances to avoid injuring other travel-

ers who have equal right to the use of the highway. For the mutual protection of travelers upon a public highway, certain rules have grown up by custom through long continued use and practice, and are crystallized into law under what is designated in the books as "the law of the road." One of these rules is, "that travelers in meeting shall each bear or keep to the right." "This rule," say the learned authors on Roads and Streets, "requiring travelers who meet to pass to the right is not an inflexible one, and there may be circumstances requiring one to keep to the left in the particular case. Emergencies may arise where, in order to escape from danger to one's self or to prevent injury to others, it will be not only excusable but perfectly proper to temporarily violate the general rule." 2 Elliott on Roads & Streets, 1081.

Travelers owe to each other the reciprocal duty of observing these rules, and a failure to exercise ordinary care to observe them resulting in injury to another, will constitute actionable negligence. The duty of care which the drivers of automobiles are bound to exercise is commensurate with the dangers to be anticipated and the injuries that are likely to result from the use of vehicles of that character. The more dangerous the character of the vehicle, of course, the greater is the degree of care required in its operation. See 2 Elliott, Roads & Streets, Chap. XLII, Secs. 1078-81. p. 617 *et seq.*: Berry on Automobiles, Sec. 163. See, also, Ruling Case Law, p. 1182 *et seq.*, and cases cited; *Minor* v. *Mapes*, 102 Ark. 351.

2. There is no testimony tending to prove that the appellant had any interest in Oliphint's car or any control over the driver of such car. There was no testimony tending to prove that she was to pay any part for the hire of the car. or that she had any right to direct the manner in which the car should be driven, or to designate the places where they should go. On the contrary, the undisputed evidence shows that the car was furnished by Oliphint, and that the appellant, with the other young lady, were invited by Jennings to join him and Oliphint

in a drive for their mutual pleasure. There was no evidence tending to prove that the occupants of the Oliphint car were, in the sense of the law, engaged in any common enterprise or venture that would render the negligence of any one of them imputable to the others. The uncontroverted evidence shows that appellant and the other young lady were but the invited guests of Jennings and Oliphint on a drive for their reciprocal pleasure in an automobile which Oliphint alone was driving, and over the movements of which he had complete control. Therefore, under the doctrine in *Hot Springs Street Ry. Co.* v. *Hildreth,* 72 Ark. 572, and according to the decided weight of authority in other jurisdictions, the negligence of Oliphint, if any, could not be imputed to the appellant. *Schultz* v. *Old Colony Str. Ry. Co.,* 193 Mass. 309-322, 79 N. E. 877, 8 L. R. A. (N. S.) 597, 118 Am. State Rep. 502, 9 Ann. Cas. 402; *Sampson* v. *Wilson,* (Conn.) 96 Atl. 163; *St. L. & S. F. Ry. Co.* v. *Bell,* (Okla.) L. R. A. 1917-A, 543; *Union Pac. Ry. Co.* v. *Lapsley,* 16 L. R. A. 800, 2 C. C. A. 149, 51 Fed. 177, and other cases cited in appellant's brief.

(3) In view of a new trial, it may be well to state that, while the negligence of the driver of an automobile cannot be imputed to one who is merely riding as his guest, yet it is the duty of the guest to exercise ordinary care for his or her safety, and a failure to exercise such care which contributes to the injury, or which might have resulted in avoiding the danger and resultant injury, will constitute contributory negligence. This doctrine is recognized in most of the above cases. See also *Miller* v. *Louisville N. A. & C. R. Co.,* 128 Ind. 97; *Vincennes* v. *Thuis,* 28 Ind. App. 523; *Willfong* v. *Omaha & St. L. R. Co.,* 116 Iowa 548; *Bush* v. *Union P. R. Co.,* 62 Kan. 709; *Missouri, K. & T. R. Co.* v. *Bussey,* 66 Kan. 735; *Meenagh* v. *Buckmaster,* 26 App. Div. 451; *Fechley* v. *Springfield Traction Co.,* 119 Mo. App. 358; *Brickell* v. *New York C. & H. R. R. Co.,* 120 N. Y. 290; *Anderson* v. *Metropolitan Street R. Co.,* 61 N. Y. Sup. 899; *Ulrich* v. *Toledo Consol. St. Ry. Co.,* 10 Ohio C. C. 635; *Dean* v. *Pennsylvania Ry.*

*Co.,* 129 Pa. 514; *Griffith* v. *Baltimore & Ohio Ry. Co.,* 44 Fed. 574; *Galveston, H. & S. A. R. Co.* v. *Kutac,* 72 Tex. 643

There was testimony tending to prove that Oliphint, on approaching the curve where the collision occurred, was driving at the rate of 25 or 30 miles an hour; that on the inside of the curve was a store building which wholly obscured from view those travelers on the highway approaching the curve. Therefore, as already stated, it was a question for the jury to determine as to whether the appellant exercised such care as a person of ordinary prudence and caution would have done under the same circumstances.

We deem it unnecessary to discuss the rulings of the court in refusing to grant appellant's prayers for instructions *seriatim,* as to do so would unduly extend the opinion. What we have already said generally as to the law in such cases will be sufficient guide to the circuit court upon a new trial. In appellee's prayer for instruction No. 1, which the court granted, the court told the jury "to find in favor of the defendant." This was error, for which the judgment is reversed and the cause is remanded for a new trial.