WILSON *v.* HOLLOWAY.

4-8355                                          208 S. W. 2d 178

Opinion delivered February 9, 1948.

Jeta Taylor, Paul E. Gutensohn and Warner & Warner, for appellant.

Batchelor & Batchelor and Creekmore & Robinson, for appellee.

Smith, J.   Arthur Holloway and Reba, his wife, filed suit in the Crawford Circuit Court for damages to compensate a personal injury sustained in a collision with appellant Wilson's truck.   His brother, Earl and Earl's wife, filed a similar suit in Crawford county, based upon the same collision, in which all the plaintiffs sustained personal injuries more or less serious.

Thereafter appellant Wilson filed suit in the Franklin Circuit Court against appellees for damages arising out of the collision.   He recovered a judgment against Arthur Holloway in this suit to compensate the damages to his truck, but the trial court set this judgment aside for the reason that a member of the jury, which had tried the case, visited the scene of the collision unaccompanied by other members of the jury.   The Franklin Circuit Court convened prior to the Crawford Circuit Court, and demurrers filed in the Franklin Circuit Court to Wilson's complaint were sustained as to all the defendants except appellee, Arthur Holloway.   The suits brought in the Crawford Circuit Court were consolidated for trial and judgments were rendered in favor of all the plaintiffs for various sums, and from the judgments upon these verdicts is this appeal.

A motion was filed to dismiss the suit of Arthur Holloway upon the ground that he was a resident of Sebastian county at the time of the collision causing the injury which had occurred in Franklin county.   The motion was overruled, but we find it unnecessary to

consider this motion in our view of the testimony, and the legal effect thereof.

As stated the suits arose out of the collision between an automobile in which the plaintiffs were riding, and a truck owned by Wilson, on October 22, 1946, at about 10 p. m. at a place about four miles west of Ozark, in Franklin county, on Highway No. 64. The pictures of the locality where the collision occurred and a map thereof, offered in evidence, show that the collision occurred at a curve in the highway which began near an elevation in the highway, which the parties refer to as a hill. The photographs indicate that the road is comparatively level, with a slight grade. It had been raining and was raining at the time of the collision, and the visibility was low.

A party of four, consisting of Arthur and his brother, Earl, with their wives, left the home of Earl in Van Buren at about 5 p. m. and went to Ft. Smith for their evening meal. They remained in the restaurant about an hour and a half. All admitted that they drank beer while in the restaurant, but all testified that they drank only two bottles each. They returned to Van Buren where they decided that they would drive to Alix to visit another of the Holloway brothers, and they were on their way there when the collision occurred.

Appellant Wilson operated under the name of Wilson Transfer Company, doing a general trucking business, and he has his trucks designed to service disabled cars and other trucks. Another collision had occurred earlier that night, near the curve above referred to, between another car and a truck, and Wilson had answered the call for a service truck, and after servicing the automobile, he returned to get the truck. Before leaving with the car, which he had serviced, he pushed the truck off the highway onto the side road.

Wilson was accompanied by two men when he returned for the disabled truck. On arriving at the scene of this first collision he drove his truck across the highway and backed it up to the disabled truck. He got out of his truck and went to the end of it to get flares to

place on the road, but before getting them, appellee's automobile collided with his truck, which was parked on the side of the road, and he escaped injury only by jumping into a ditch which paralleled the side road.

Wilson had driven west to the place of the collision and his truck was facing in that direction after crossing the road and backing up to the disabled truck. Appellees were driving east traveling, according to their testimony, at a speed of about 35 miles per hour, although another person, traveling in a car, testified appellees were driving at a speed of from 50 to 55 miles per hour when they passed him. The testimony is conflicting as to whether Wilson had dimmed his lights. He and the two men who were in the truck with him testified that he had dimmed the lights, and that he had done so as it was safer to drive in the rain, then falling, with dim lights than with lights burning brightly. All appellees testified to the contrary, and as the failure to dim his lights was the sole allegation of negligence submitted to the jury, we must assume that Wilson had not dimmed his lights.

Arthur Holloway, who was driving the car, testified that "As I topped the top of a rise or hill, I noticed car lights and it looked like I was just meeting a car. I had my fog lights on and my head lights. His (Wilson's) lights blinded me. I dimmed my lights two or three times, and turned my fog lights out. He (Wilson) never did dim his lights. I had been driving about 35 miles per hour, but when I crossed the hill I took my foot off the accelerator, and the closer I got to the truck the more its lights blinded me." He further testified that he kept getting over as far on the slab (or highway) as he could, without getting completely off. In 40 or 50 yards of the place of collision, he felt his right front wheel and the rear right wheel get off the slab. It looked like someone was trying to hog the road. He put his foot over on the brake, but before he could stop he had run into the truck and the collision occurred. His left wheel did not get off the pavement. He signaled what he presumed to be an oncoming car to dim its lights. He dimmed his lights two or three times. The truck did

not dim its lights, which were shining right straight up the highway and blinded him. There were no other lights on the truck, and no flares or flags were out. The testimony of the other occupants of the car was to the same effect.

The complaint alleged several acts of negligence on the part of Wilson, but the only question submitted to the jury was whether Wilson was negligent in failing to dim his lights. There was submitted, however, the question whether occupants of the car were guilty of contributory negligence. On this issue the jury was correctly instructed that if the occupants of the car were, at the time of the collision engaged in a joint enterprise, the negligence, if any, of the driver of the car would be imputed to all of its occupants.

It is not seriously questioned that under the testimony in this case this instruction was properly given. It is insisted, however, that the motion for a new trial did not call to the trial court's attention the fact that contributory negligence had been pleaded and interposed as a defense. But the several instructions given on this issue make clear the fact that this defense was interposed and was seriously relied upon. Separate instructions were asked as to each plaintiff to the effect that a verdict should be returned in Wilson's favor if the occupants of the car were guilty of contributory negligence, and were engaged in a joint enterprise and the motion for a new trial assigned as error the failure to give each of these instructions.

Two defenses were interposed. First, that Wilson was guilty of no negligence, and second, that if the parties were engaged in a joint enterprise, the negligence of the driver of the car, if he were negligent, would be imputed to all persons engaged in the enterprise, and an instructed verdict against all the plaintiffs was asked. Wilson was entitled to the requested instruction if the testimony established either defense, both of which questions were submitted to the jury. We concede, therefore, that the motion for a new trial was sufficient to call to the attention of the court both these issues, although

the verdict of the jury apparently reflects the finding that Wilson was guilty of negligence and that the occupants of the car were not guilty of contributory negligence.

That the issue of a joint enterprise was properly submitted to the jury does not appear to be seriously questioned. After eating in Fort Smith, where it was admitted that each member of the party had drunk two bottles of beer, although it was denied that any one had drunk any more, the party returned to Van Buren where it was agreed they would pay a social visit, notwithstanding the inclement weather. After the collision a pint whiskey bottle, nearly empty, was found near the car. The ownership of this bottle was denied by appellees, but a few feet from it, another bottle of whiskey, a fifth of a gallon in size, was found. The stopper of both bottles was missing, but the stopper to the larger bottle was found in appellees' car, and the ownership of that bottle was admitted, although it was denied that any member of the party had drunk any of the whiskey. Both bottles were nearly empty, but there was more whiskey in the larger bottle than in the smaller one, and it was explained that the party was taking what whiskey there was in the larger bottle to the home of the person they were expecting to visit.

After the collision appellees were picked up by two boys. They stopped at the home of a Dr. Porter, who said he could do nothing for them. They then drove to the home of a Dr. Pillstrom at Altus, who gave emergency treatment, including the sewing up of a cut over Arthur's eye. All four of the party had been injured to some extent, but the doctor gave emergency treatment only to Arthur Holloway and his wife who had ridden on the front seat of the car with her husband. The doctor testified that they smelled of whiskey and that all of them had been drinking. He would not say that any of them were drunk or how drunk, but maybe too much to drive a car. He stated they could not talk too plain and that they were not too steady on their feet. The testimony abundantly warranted the submission to

the jury the question whether the parties were engaged in a joint enterprise, and appears susceptible of no other conclusion than that they were on a joint enterprise.

It was held in the case of *Mo. Pac. Transportation Co.* v. *Howard,* 201 Ark. 6, 143 S. W. 2d 538, that where a number of persons drinking intoxicants and driving around in an automobile for pleasure are engaged in a joint or common enterprise, the negligence of the driver of the car would be imputed to each member of the party. The case of *Albritton* v. *Ferguson,* 197 Ark. 436, 122 S. W. 2d 620, to the same effect was there cited.

In the case of *Sparks* v. *Chitwood Motor Co.,* 192 Ark. 743, 94 S. W. 2d 359, Justice MEHAFFY approved the following statement from Berry on Automobiles, § 5.181: "If the occupants and driver of an automobile drink together and become intoxicated, each is as responsible as the driver for negligent driving, and none can recover for injuries due to such negligence."

We might dispose of this appeal by saying that under the undisputed evidence, no negligence on the part of Wilson was shown. The only issue of negligence submitted to the jury was that the lights on Wilson's truck were burning brightly and that he failed to dim them after being signaled to do so. No issue was submitted as to whether Wilson was negligent in parking his truck on the wrong side of the road, but that contention could not be sustained if made. The testimony of all the witnesses who saw the truck, except that of appellees themselves, was that the lights had been dimmed, but in view of the jury's verdict, we must assume that they had not been. But even so, the testimony is undisputed that neither appellant's truck nor the one he was about to service was on the highway proper. Both were resting on the shoulder of the road, but appellees say that the truck had been so parked that the head lights shone directly in front of appellee's approach. The driver of the car testified that he was about 160 yards from the truck when he first blinked his lights, and that when he first saw the truck he supposed it was an approaching car, and he began to blink his lights as a request that

the truck driver do the same. If the lights of the truck blinded the driver of the car, it was his duty to take greater precaution, yet he continued down the hill or grade at a speed of 35 miles per hour until his car went off the concrete portion of the highway. When this occurred, Holloway must have known that the truck was parked on the shoulder of the highway, yet he made no effort to turn the car back on the concrete. There were 18 feet of concrete on which he could have passed the truck safely, to say nothing of the width of the side road on both sides of the concrete, and even though the lights from the truck blinded him, they were from six to eight hundred feet from the place where the collision occurred when he saw them and he did not apply his brakes to stop the car until he was too near the truck to do so. He was asked, ''When you were 40 or 50 yards away did you apply the brake?'' He answered, ''I put my foot on the brake pedal.'' Question, ''But did you apply it?'' And he answered, ''No sir,'' and he did not apply the brake until he was within 20 or 30 feet of the truck, at which time he was traveling at about 20 or 25 miles per hour. Wilson had put out no flares as time to do so had not been afforded, but he had not parked his car on the concrete, but on the side road.

A state patrolman who investigated the accident the morning after it occurred, and who made a report as to the conditions which he found, testified that the tracks of the car indicated that one of the wheels of the car went over the pavement a distance of 50 feet from the place of collision, and that the tracks of the truck were ''clear off the highway, a distance of 12 to 18 inches from the concrete.'' This witness could tell where the collision occurred from the debris and the glass, and he could tell the truck tracks from the car tracks. One of the Holloways admitted to this witness that he had drunk some of the whiskey, but denied being drunk. The witness made no arrests for drunken driving, because Wilson asked him not to do so.

From this testimony it appears to us that only one conclusion can fairly and reasonably be drawn, and that is that Wilson was guilty of no negligence as he had not

stopped his truck on the concrete, but that even so if the driver of the car had been alert and in full possession of his faculties, he must have observed the situation which required that he place his car in full control, which he did not do. For these reasons the judgments must be reversed and as the causes appear to have been fully developed they will be dismissed.

Ed. F. McFaddin, Justice (dissenting). The majority opinion shows on its face that this court has invaded the province of the jury, and has decided controverted questions of fact. Therefore, I respectfully dissent.