TINDALL *v.* SIMS.

TINDALL *v.* JONES.

4-8383—4-8384                    208 S. W. 2d 173

Opinion delivered February 9, 1948.

*J. L. Shaver* and *Rieves & Smith,* for appellant.

*E. J. Butler* and *Hale & Fogleman,* for appellee.

McHANEY, Justice. The appeals in the two cases above named are from different courts, but have been consolidated here, because the facts are quite similar, and come from decrees holding loan contracts, evidenced by promissory notes secured by mortgages on real estate, to be usurious and void.

Appellees are Negroes. Appellant is a white man residing in Memphis, Tennessee. He is engaged in the real estate and loan or loan brokerage business. In the Sims case he says he is in the real estate business and buys commercial paper. In the Jones case he says he has not been in the real estate business for 10 years. He denied that he makes loans.

H. K. Gish, who is not a party to this litigation and did not appear as a witness, also lives in Memphis and is engaged in the loan business. In October, 1943, Gish began to negotiate loans to Negroes in Crittenden and Cross counties, completing 10 of such loans up to December 1, 1944, including the Sims and Jones loans here involved.

In the Sims case, the evidence is undisputed that Sims was indebted to a bank in Forrest City in the sum of $1,389.73, secured by a mortgage on his 40-acre farm, and went to Gish to borrow $1,900 on the farm, to pay off that indebtedness, and for other purposes. Gish agreed to make the loan and would be out to inspect the farm to determine the value of the security. Later Gish and appellant went out to inspect the farm. Sims, who is unable to read or write, and his wife, who is also practically illiterate, later went to Memphis to close the deal, taking with them a statement from the bank of the amount of its debt. They were presented six notes and a deed of trust to be signed. The wife signed them for herself and husband. They both thought the notes totaled $1,900, the amount they sought to borrow, and that the deed of trust secured that amount only, when in fact the notes totaled $2,600, and the trust deed secured said amount. The notes and trust deed were issued to

appellant as the lender and Gish was not named in any instrument, although Sims thought Gish was the lender and never had heard of Tindall in connection. with the loan. Appellant gave his check to his attorney for $2,300, and said attorney paid off the bank's indebtedness of $1,389.73 and turned over the balance to Gish. Sims later called on Gish in Memphis and was advised by Gish that he had a balance coming to him of $510 from which he withheld $50 for himself and $25 for the attorney's fee, leaving a net to Sims of $435 which was paid to him. This accounts for a total of $1,899.75 out of the $1,900 borrowed, the other 25 cents probably being a notary fee.

On August 25, 1944, appellees filed an answer to the suit of the National Bank of Eastern Arkansas against them, which is not relevant here, said bank not being a party to this appeal, and a cross complaint against appellant, alleging the facts aforesaid, and, that said Gish was not their agent, but was the agent of appellant; that they learned after the original action was filed herein that the deed of trust and notes they had signed secured a purported indebtedness of $2,600; that they have never received any sums from appellant or his agent Gish in excess of $1,824.73; and that the instruments now held by appellant do not reflect the just indebtedness owing to him. The prayer was for cancellation and determination of the true indebtedness owing by them. Later an amendment to the cross complaint was filed pleading usury.

Appellant filed a general denial to the cross complaint of appellees. He alleged that he bought the Sims notes and mortgage from Gish at a discount of $300 and that the instruments were so drawn as to make him the payee. On December 12, 1946, he amended his answer to seek a foreclosure of the deed of trust, three of the notes then being in default.

Trial resulted in a decree cancelling the notes and deed of trust because usurious. The court found "that H. K. Gish was acting in conjunction with and as the agent of the cross defendant, C. A. Tindall, in obtaining

and making such loan and, at no time, was the agent of or acting for the cross defendants, Will Sims and Carrie Sims; that the notes and deed of trust executed by the cross complainants to secure the sum actually obtained amounted to a usurious contract, the agent, Gish, not being entitled to deduct any fees or brokerage on the loan which could be properly chargeable to any person other than his principal, C. A. Tindall; that the maximum legal rate of interest under the laws of Arkansas, when added to the loan actually received, would not amount to the amount charged and sought to be charged and amounted on its face and in fact to usury; that the debt and obligation should be cancelled together with the deed of trust securing the payment thereof; that the amount paid into the court upon the interpleader of the cross complainants should be surrendered and returned to the cross complainants, Will Sims and Carrie Sims.'' A decree was entered accordingly.

This appeal comes from that decree.

It is clear to us, as it was to the trial court, that these ignorant Negroes were badly mistreated and that an attempted fraud was practiced upon them. Clearly they sought to borrow from Gish only $1,900, but by fraud or deceit were induced to sign obligations to pay $2,600 at 6% per annum to appellant who paid $2,300 for them. Who got the other $400? Evidently Gish got it. There were five notes of $400 each and one note for $600, all dated March 8, 1944, and one due on December 1, 1944, and one on each December 1 to and including 1949, with interest at 6% per annum. The interest reserved, together with the discount of $300 to appellant, plus the more than $400 kept by Gish, clearly amount to more than 10% per annum on the $1,900 loan, and is usurious in amount. It was admitted in oral argument by counsel for appellant that, if we should affirm the trial court's finding in the Sims case, that Gish was acting as the agent of appellant in obtaining and making such loan, and was at no time the agent of appellees, the contract was usurious and the decree should be affirmed.

We think the overwhelming weight of the evidence supports the court's finding in this respect. A number of other loans were secured by Gish from other Negroes during 1943 and 1944, and all followed substantially the same pattern as that followed in this case. None of these loans was made by Gish, except possibly a "furnish" loan to Will Jones for $700. In all of them, notes and deeds of trust were executed by the borrowers for substantially larger amounts than the borrower wanted to borrow, and·without their knowledge, and in every case this excess over what the borrower thought he was borrowing was split between Gish and appellant, the latter claiming to have bought the notes from Gish at a discount, even though the notes and trust deeds were drawn in his·favor. How could he buy his own notes from one who did not have a dollar invested in any of them? All of the facts and circumstances lead definitely to the conclusion that Gish and appellant were working together. While appellant denied that Gish was his agent, his actions speak louder than his words. He knew the loans were to be made with his funds, he inspected the lands on which loans were to be made in company with Gish, told Will Jones that Gish was his agent, was referred· to by Gish as the "big boss" in his presence. Some of the notes were paid by borrowers to Gish and he stamped them paid with appellant's stamp, and many other facts and circumstances justified the court's finding that ·Gish was the agent of appellant and not the agent of the borrowers. Gish had no agreement with any borrower to pay him a commission for procuring a loan and·all of them thought Gish was lending the money. Appellant, through his attorney, had all·the proceeds of loans, after satisfying outstanding liens, paid to Gish, thus enabling him to get the difference between the actual loan and the face amount thereof, less appellant's so-called discount.

We conclude that the court's finding of agency between Gish and appellant is supported by a preponderance of the evidence. Therefore, the loan in the Sims case is usurious and void. Our constitution § 13 of Art. 19 provides that "All contracts for a greater

rate of interest than 10 per cent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit same by law; . . ." This the General Assembly did. Section 9401 *et seq.*, Pope's Digest, and § 9403 authorizes the procedure here taken.

The decree in the Sims case is accordingly affirmed.

The Jones case follows the same pattern as the Sims case. Notes and a deed of trust were executed to appellant for a larger amount than the borrower asked for or received. But the testimony of Will Jones and his wife as to the actual amount received by them under the loan is too indefinite and uncertain to justify a finding of usury.

It appears that appellees executed notes secured by deed of trust to appellant on October 20, 1943, totaling $4,250, when, as they alleged, they sought to borrow and thought they had borrowed only $3,000. But they testified that they got $3,700 or $3,800 or more. It appears that about three months later they secured a loan from Gish, on a note or notes for $700 secured by a second deed of trust on the same property. This appears to be the only loan that Gish made to any of the 10 borrowers who testified in these records. Whether appellees meant they received the sum stated above out of the loan made by appellant, or whether they received said amount from both loans we are unable to say. Certain it is that, of the loan made by appellant for the face amount of $4,250, $3,000 of it went to pay an existing mortgage indebtedness to Mrs. Curlin. Appellant says he paid $3,800 for the Will Jones paper, so called discount of $450. If the appellees received from this loan the amount they stated they received, the transaction might not be usurious, but might be fraudulent as to the excess. Also appellant might be entitled to ask subrogation on the Curlin mortgage paid by him.

In view of the uncertainty in the evidence and feeling that the evidence should and can be more fully developed, we reverse the decree in this case and remand the cause for further proceedings.