In re Tommy HEAD and Jennetta Head, Debtors.

BANK OF DOVER, Plaintiff,

v.

Tommy and Jennetta HEAD, Defendants.

Bankruptcy No. 582–00947–S.
Adv. No. 583–0016.

United States Bankruptcy Court, W.D. Louisiana, Shreveport Division.

Oct. 4, 1983.

Dale Finley, Russelville, Ark., for Bank of Dover.

William E. Steffes, Baton Rouge, La., for Tommy and Jennetta Head.

LeROY SMALLENBERGER, Bankruptcy Judge.

### STIPULATED FACTS

These facts, which were stipulated to by the parties, admit that the loans would be usurious under Arkansas State law. Therefore, the sole issue to be decided by this Court, is whether the transactions in question fall under federal law, 12 U.S.C. § 86a, which preempts state law.

The following facts were stipulated to through counsel for each of the parties:

(1) Tommy and Jennetta Head executed a promissory note, dated October 5, 1977, in the original principal amount of $10,-010.00 bearing interest from date, at the rate of 10% per annum, payable to and at the Bank of Dover, Pope County, Arkansas; this note was secured by a mortgage on real property owned by Tommy and Jennetta Head, described as follows:

> The north one-half of the southeast quarter of the northeast quarter of Section 28, Township 9 North, Range 18 West, Pope County, Arkansas (containing 20 acres more or less)

> The north one-half of the south one-half of the northwest quarter of Section 27, Township 9 North, Range 18 West, Pope County, Arkansas (containing 40 acres more or less);

(2) Tommy and Jennetta Head executed a promissory note in the original amount of $15,815.00, dated January 27, 1978, bearing interest at the rate of 10% per annum, from date until paid payable at and to the Bank of Dover, Dover, Arkansas; said promissory note was also secured by a mortgage given on the aforesaid real estate located, in Pope County, Arkansas, owned by Tommy and Jennetta Head.

(3) On or about January 1, 1981, Tommy Head *only*, executed a promissory note in the original principal amount of $5,073.03 bearing interest from date at 20.5% per annum, payable to the order of and at the Bank of Dover, Pope County, Arkansas; no new or additional mortgage was executed in connection with this note and said note was given to refinance and replace the prior note, dated October 5, 1977, in the original principal amount of $10,010.00.

(4) On or about January 1, 1981, Tommy Head *only*, executed a promissory note in the principal amount of $15,642.33, payable to the order of and at the Bank of Dover, Dover, Arkansas, bearing interest at the rate of 20.5% per annum from date until paid; no new or additional mortgage was executed in connection with this note was given to refinance and replace the prior

note dated January 27, 1978, in the original principal amount of $15,815.00.

(5) Extensions of all four promissory notes were granted from time to time by the Bank of Dover, at various rates and for various extension fees.

(6) After making and funding the original loan, in the principal amount of $10,010.00, on October 5, 1977, and making and funding the second loan in the original principal amount of $15,815.00, on January 27, 1978, no additional funds or loans of principal were made by the Bank of Dover, to Tommy and/or Jennetta Head thereafter; as of January 27, 1978, the principal balance due on the note dated October 5, 1977, was $9,148.19 and the total principal balance due on both notes at that time was $24,963.19; at no time did the principal balance owed by Tommy and Jennetta Head to the Bank of Dover ever equal $25,000.00 or more.

(7) The contracts to repay indebtedness as well as the security agreements were perfected under and are to be governed by the laws of the State of Arkansas, which were in effect at the time they were confected with any remedial changes which may have been made thereafter with any modification made by Federal statutes which may, in some cases, preempt the laws of the State of Arkansas.

(8) At all times on and after January 1, 1980, the interest rate being charged by the Bank of Dover exceeded 10% per annum, the maximum permissible limit under Arkansas law (except as preempted by Federal law) during all times relevant to the decision of this case.

(9) The original two promissory notes (dated October 5, 1977 and January 27, 1978, respectively) provided for fixed interest rates at the rate of 10% per annum on each loan and did not provide for interest at variable or fluctuating rate and were the only notes executed by Tommy and/or Jennetta Head until execution by Tommy Head of the two renewal notes described in paragraphs no. 3 and 4 above on or about January 1, 1981.

(10) The promissory notes executed by Tommy Head *only,* on January 1, 1981, represent a renewal of the indebtedness represented by the original promissory notes executed in 1977 and 1978, in connection with which the two mortgages were given to the Bank of Dover.

(11) The original promissory notes did *not* represent a series of advances in which the aggregate of all sums to be advanced or agreed or contemplated to be advanced pursuant to a commitment or other agreement was to be $25,000.00 or more.

(12) The following is a table showing the Federal discount rate in effect (and any applicable surcharge) at the Federal Reserve Bank, in whose district the Bank of Dover lies during all periods relevant to the decision of this case:

| | DISCOUNT RATE | SURCHARGE |
|---|---|---|
| 12–5–80 | 13% | 3% |
| 5–5–81 | 14% | 4% |
| 9–22–81 | 14% | 3% |
| 10–13–81 | 14% | 2% |
| 11–2–81 | 13% | 2% |
| 11–17–81 | 13% | 0% |
| 12–4–81 | 12% | 0% |
| 7–21–82 | 11½% | |
| 8–2–82 | 11% | |
| 8-16-82 | 10½% | |
| 8-27-82 | 10% | |

(13) The following is a schedule of payments for the note issued to debtors, in 1977, which was renewed in 1981:

Note Number 22062 – changed to 28400–001–3
Original date of note: 10/05/77
Original Amount: $10,010.00

Payments Received:

| DATE | INTEREST | PRINCIPAL |
|---|---|---|
| 12/19/77 | $ 73.84 | $ 307.37 |
| 1/18/78 | $ 75.06 | $ 300.00 |
| 3/20/78 | $ 107.77 | $ 300.00 |
| 4/25/78 | $ 50.91 | $ 300.00 |
| 5/3/78 | $ 49.18 | $ 300.00 |
| 9/11/78 | – | $1891.95 |
| 12/18/78 | $ 457.98 | – |
| 4/16/79 | $ 214.20 | – |
| 8/12/80 | $ 672.23 | $1327.77 |
| Reworked 1/1/81 | | |
| 8/27/81 | $ 569.11 | $ (507.30) |
| 10/20/81 | $ (359.80) | $ 147.50 |

(14) The following is a schedule of payments for the note issued to debtors in 1978, which was renewed in 1981:

Note Number 23077 — changed to 28400–005–6
Original date of note: 1/27/78
Original amount: $15,815.00

Payments Received:

| DATE | INTEREST | PRINCIPAL |
| --- | --- | --- |
| 4/16/79 | $1923.80 | $ – |
| 5/12/80 | $1689.93 | $ 310.00 |
| Reworked 1/1/81 | | |
| 4/16/81 | $ 99.48 | $ – |
| 8/27/81 | $1564.23 | $1719.16 |

## CONCLUSIONS OF LAW

■ A Federal Court must adopt as its own the choice of law rules of the state where it sits. See *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This U.S. Bankruptcy Court sits in Louisiana, therefore, it must follow Louisiana's choice of law rules. Louisiana's positive statement as to the choice of law rule governing contracts is as follows:

La.C.C. art 10. The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.

But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.

■ The original contracts to repay money and loans were made at Dover Bank, Pope County, Arkansas. The immovable property securing the repayment of the indebtedness due is located in Pope County, Arkansas. All payments have been made by the debtors during the length of these contracts directly to Dover Bank, in Pope County, Arkansas. The parties stipulated that absent preemption by Federal statutes the laws of the State of Arkansas are to govern. Therefore, the contracts to repay money, the application of monies which have been repaid and said security devices given under said contracts must be governed by the laws of the State of Arkansas unless state law was preempted by federal law.

Unless Arkansas State law was preempted by federal law then these loans are to be governed by applicable Arkansas State law during the period in question. *ARK. CONST. Art.* 19 Sec. 13 provided that: "All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest...". *ARK.STAT. ANN.* Sec. 68–609 provided that: "Every lien created or arising by mortgage, deed of trust or otherwise, on real or personal property, to secure the payment of a contract for a greater rate of interest than ten per centum [10%] per annum, either directly or indirectly, and every conveyance made in furtherance of any such lien is void; and every such lien or conveyance may be canceled and annulled at the suit of the maker of such usurious contract, or his vendees, assigns or creditors...". The brief of the Bank of Dover admits that the loans in question would be and are usurious under Arkansas State law, but claims these particular transactions are exempt and Arkansas State law was preempted under 12 U.S.C. Section 86a. Therefore, the central issue to this case, is whether Arkansas State law was preempted under 12 U.S.C. Section 86a.

12 U.S.C. Section 86a was enacted by Pub.L. 96–221, and was amended by Pub.L. 96–399. Comprising part of 12 U.S.C. Section 86a is Section 511 of Pub.L. 96–221, as amended by Pub.L. 96–399, Title III, Section 324(b), (d), October 8, 1980, 94 Stat. 1648, which provides in the pertinent part that:

(a) If the applicable rate prescribed in this section exceeds the rate a person would be permitted to charge in the absence of this section, such person may in the case of a business or agricultural loan in the amount of $1,000.00 or more, not withstanding any state constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve and charge on any such loan, interest at a rate of not more than 5 per centum in excess of the discount rate, including any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the person is located.

(b) For the purpose of this section—
(1) the term "loan" includes all secured and unsecured loans, credit

sales, forbearances, advances, renewals or other extensions of credit made by or to any person or organization for business or agricultural purposes;

(2) the term "interest" includes any compensation, however denominated for a loan;

(3) the term "organizational" means a corporation, government or governmental subdivision or agency, trust, estate, partnership, co-operative, association, or other entity; and

(4) the term "person" means a natural person or organization.

Also comprising part of 12 U.S.C. Section 86a, which is covered under *Effective Date*, is Section 512 of Pub.L. 96–221 as amended by Pub.L. 96–399, Title III, Section 324(c)(1), (d), October 8, 1980, 94 Stat. 1648, which provides that:

(a) The provisions of this part [this section] shall apply only with respect to business or agricultural loans in amounts of $1,000.00 or more made in any state during the period beginning on April 1, 1980, and ending on the earlier of—

(1) April 1, 1983; or

(2) The date, on or after April 1, 1980, in which such state adopts a law or certifies that the voters of such state have voted in favor of any provision, constitutional or otherwise, which states explicitly and by its terms that such state does not want the provisions of this part to apply with respect to loans made in such state,

except that such provision shall apply to any loan made on or after such earlier date pursuant to a commitment to make such loan which entered into on or after April 1, 1980, and prior to such earlier date.

(b) A loan shall be deemed to be made during the period described in subsection (a) if such loan—

(1)(A) is funded or made in whole or in part during such period, regardless of whether pursuant to a commitment or other agreement therefore made prior to April 1, 1980;

(B) was made prior to or on April 1, 1980, and bears or provides for interest during such period on the outstanding amount thereof at a variable or fluctuating rate; or

(C) is a renewal, extension, or other modification during such period of any loan, if such renewal, extension, or other modification is made with the written consent of any person obligated to repay such loan; *and*

(2)(A) was in an original principal amount of $25,000.00 or more ($1,000.00 or more on or after the date of enactment of the Housing and Community Development Act of 1980) [October 8, 1980]; or

(B) is part of a series of advances if the aggregate of all sums advanced or agreed or contemplated to be advanced pursuant to a commitment or other agreement therefore is $25,000.00 or more ($1,000.00 or more on or after the date of enactment of the Housing and Community Development Act of 1980) [October 8, 1980].

Section 512 of Pub.L. 96–221 as amended by Pub.L. 96–399, Title III, Section 324(c)(1), (d), October 8, 1980, 94 Stat. 1648 determines what loans in which *no* principal was advanced after April 1, 1980, are governed by 12 U.S.C. Section 86a. In this case, it is stipulated that no principal was advanced after 1978 and the loans in question are renewals of prior indebtedness.

In its brief, the Bank of Dover admits that the notes in question were the last of a series of notes executed by the parties over a period of years, with the last notes being executed in January, 1981. The Bank of Dover admits that *no* new money was loaned at that time and the notes merely represent a renewal of existing indebtedness. Additionally, the stipulation of facts proves that the actual principal amount loaned to the debtors was loaned in 1977 and 1978, and no new advances of principal were made after that time.

■ In order for 12 U.S.C. Section 86a to apply, the original loans made in 1977 and 1978 would have had to have borne interest

at a variable rate, or the instant transaction would have had to have a renewal of the prior loans *and* the original loans would have had to have been in a principal amount of $25,000.00 or more. In the stipulation of facts, in paragraph (6) the stated principal balance due on both notes, at the time the second note was executed amounted to $24,963.19, and the parties stipulated that at no time did the principal balance owed by Tommy and Jennetta Head to the Bank of Dover ever equal $25,000.00 or more. There is no indication that it was even contemplated that advanced of $25,000.00 or more would be made to the debtors by the Bank of Dover. Therefore, since the original loans which led up to the execution of the promissory notes, in January, 1981, were made prior to April 1, 1980, and since the original principal amount loaned or contemplated to be loaned never reached $25,000.00, then 12 U.S.C. Section 86a simply is not applicable to the transactions and Arkansas State law must apply.

Since the Court finds that 12 U.S.C. Section 86a is not applicable to the transactions at issue, and the Court finds that Arkansas State law governs the transactions, then the Court must apply the appropriate remedy under Arkansas State law.

The stipulation of facts in paragraphs (3) and (4) show that interest charged during the period in question exceeded 10% per annum, and also the brief filed on behalf of the Bank of Dover admits that the loans in question would be and are usurious under Arkansas State law.

■ Part of the remedy for violation of Arkansas State usury law at the time of the execution of these notes is the voiding of the contracts to repay the indebtedness. See *ARK. CONST. Art.* 19 Sec. 13, *First National Mortgage Company v. Arkmo Lumber & Supply Company,* 641 S.W.2d 31 (1982).

■ In addition to the invalidation of the contracts to repay indebtedness, the mortgages given to secure said contracts must also be voided when the contracts themselves have been found to be tainted by usury. See *ARK.STAT.ANN.* Sec. 68–609,

*Tindall v. Sims,* 212 Ark. 860, 208 S.W.2d 173 (1948), *Hendrickson v. Godsey,* 54 Ark. 155, 15 S.W. 193 (1891).

For the reasons stated, judgment is rendered in favor of Tommy and Jennetta Head. It is ordered that the claim of the Bank of Dover, in this Chapter 11 proceeding, be disallowed. It is ordered that Tommy and Jennetta Head are no longer indebted to the Bank of Dover on the notes in question before this Court. This Court also orders the Bank of Dover and the Clerk of Court, of Pope County, State of Arkansas, to cancel and erase the inscription of any such mortgage or mortgages or other encumbrances, which secured the noted of indebtedness in question before this Court, from the public records of said County and State.