## Sparks *v.* Chitwood Motor Company.

### 4-4310

Opinion delivered May 18, 1936.

*W. D. Swaim,* for appellant.

*A. T. Davies* and *Barber & Henry,* for appellees.

Mehaffy, J. The appellant, Harry A. Sparks, brought this suit in the Garland Circuit Court against

Chitwood Motor Company, a corporation, and Al Miller, for damages alleged to have been caused by the negligence of Miller. It was alleged that the appellant was in the employ of the appellee, Chitwood Motor Company, as salesman in the used car department, and that the automobile wreck was caused by the negligence of his superior, Al Miller, who was driving the automobile at the time, and was engaged in transporting appellant and other employees of said Chitwood Motor Company from Little Rock to Hot Springs. The Chitwood Motor Company is a corporation engaged in selling, trading-in, and repairing automobiles and trucks manufactured by the Chevrolet Motor Company. Appellant alleged that Al Miller was in the employ of Chitwood Motor Company as manager of its used car department, and performed various duties of a managerial and supervisory sort with respect to other departments; that Al Miller stood in the relationship of vice-principal, and was acting in the capacity of agent, employee and vice-principal of the motor company at the time of the injury.

The Chevrolet Motor Company was accustomed to hold zone meetings, at which, it is alleged that the salesmen of the distributors of the Chevrolet Motor Company throughout Arkansas, were invited and expected to attend. A meeting was held at the Marion Hotel at Little Rock on October 9, 1934. Appellant alleges that he was directed by Miller, his superior, to attend the meeting, and was instructed to report at the motor company's place of business in the late afternoon of October 9 prepared to accompany appellee, Al Miller, and other employees of the company to Little Rock for the purpose of attending the zone meeting. It was the practice of the Chitwood Motor Company to defray the expenses of its employees who were required to attend these zone meetings, and that Miller went to the motor company prior to departing for Little Rock and secured money to defray the expenses; that the motor company provided the car to be used on the trip; that the appellee Miller assumed control of the operation of said car. It is alleged that pursuant to the direction of Miller, appellant got in the car and took his place in the rear seat

and was transported to Little Rock, where they were taken to the Marion Hotel, the place of the meeting. At the conclusion of the meeting, about 10 or 11 o'clock, p.m., the appellant and other salesmen returned to the automobile and appellant took his place on the rear seat. Miller was driving and they started back to Hot Springs. At a place on the highway where the upper Hot Springs highway leaves the main highway, and the main highway curves to the left, Miller drove the automobile off the highway and collided with a tree; that Miller was driving at an excessive rate of speed, and operating the car in a careless, reckless and negligent manner. As a result of the automobile striking the tree, appellant suffered grave and permanent injuries, and prayed for damages in the sum of $45,000.

The appellees filed separate answers denying the material allegations of the complaint.

At the conclusion of the testimony the court directed the jury to return a verdict in favor of appellees, which was done.

There were five persons in the party coming to attend the meeting; the appellant, Harry A. Sparks, appellee, Al Miller, Mack Lewis, John R. Tate and H. D. Gossett.

Before the party left Hot Springs, they stopped on Central Avenue at a place known as the Black Cat and purchased two pints of liquor. They stopped at Van's Cabin after they left Hot Springs and purchased some coca-colas and drank some of the liquor. They then stopped at Benton, and again got coca-cola and drank some more of the liquor. They stopped again at Irene's Place, and there drank some beer. All of them were drinking, and, when they got to Little Rock, they went to a cafe to eat supper, and Sparks says that he became sick, went out in the alley and vomited, and then returned to the restaurant. He did not finish his supper, but went out to the car and waited for the others. They then went to the Marion Garage and Gossett and Sparks stayed in the car a while, and the other boys left and said they were going to the meeting. In about ten or fifteen minutes Gossett left to go to the meeting. Sparks testified

that later he went in and stayed fifteen or twenty minutes, and then came out and took a walk; he saw the other men at the meeting but did not talk to them. Sparks testified that he was all right when they started home; that he had been drinking whiskey, but was not drunk. He was in the back seat as they were going home, and they stopped again at Irene's Place. Sparks says, however, that he did not go in, but stayed in the back seat; that Gossett stayed with him a while and then went in, came back in a little while and got in the back seat with Sparks.

There was some conflict in the testimony, but all of the testimony shows that they were all drinking, and the preponderance of the testimony shows that they were all drunk. It is said that on the return from Little Rock to Hot Springs, just before they reached the upper Hot Springs road, some one told Miller, who was driving, that there was a sharp curve ahead, and Miller said he would straighten it out. Miller was unquestionably guilty of negligence, but according to all of the evidence, appellant was bound to know all about it; he knew that Miller was drunk and careless, and, according to all of the evidence, acquiesced in it, and made no protest. The fact is that they were all out having a gay time, and were all guilty of negligence.

The appellant insists that there is substantial evidence to support appellant's contentions, and that the court, therefore, erred in directing a verdict. He insists that there was nothing to indicate to his mind that Miller was in a condition that made it unsafe to ride with him. Sparks himself, however, testified that when they got out on the road, Miller was driving and a Ford car passed him, and Miller said that they could not do like that and get away with it. He testified that Miller took after the Ford and gained on it, kept driving fast, and that Gossett said: "You'd better slow down. We have a bad curve up there ahead." Miller said: "I'll try to straighten that out." Sparks was bound to know the condition of Miller, and knew that he was driving recklessly. He did not make any protest, but acquiesced in whatever Miller did.

Appellant calls attention to a number of authorities holding that when an automobile is being operated at the time of the accident by one of the regular employees of the defendant, there is a reasonable inference that at such time he was acting within the scope of his employment and the furtherance of the master's business. There is no dispute about this. If Miller was in the employ of the Chitwood Motor Company and about its business, the motor company would be liable if Miller was; but it will not be contended that the motor company would be liable except for the negligence of Miller, and, as we have already said, Sparks acquiesced in everything Miller did, and did not protest.

Appellant also calls attention to authorities to the effect that whether a guest in an automobile is guilty of contributory negligence is a question for the jury; and whether his failure to protest is contributory negligence is also a question for the jury.

Appellant calls attention to Blashfield Cyclopedia of Automobile Law, vol. 4, § 2185, p. 45. Of course the guest might not be guilty of negligence simply because he failed to protest. If the occupant of the automobile did what a person of ordinary prudence would have done under the circumstances, he was not guilty of contributory negligence; but, when a crowd of people go out together and all of them participate in drinking whiskey, and each one acquiesces in what the others are doing, all of them are guilty of negligence, and neither of them can recover against the other.

The degree of care required not only of the driver of the car, but also the occupants, is such care as a prudent person would exercise under the circumstances. Blashfield Cyclopedia of Automobile Law, § 631.

"The conduct of a passenger in continuing to ride in an automobile after knowing that the driver was intoxicated, has been held to amount to negligence barring recovery for injuries due to the negligence of such driver, and the driver of an automobile which came into collision with them." Berry on Automobiles, § 5.180.

"We need not consider whether or not each one of the intoxicated four would be criminally liable under this

statute; we are, however, satisfied that none of the parties should recover damages which he suffered, and which can be traced to the intoxication in which he was engaged. The jury should have been instructed in substance, in addition to the charges made, that if these four men were out in the car for a good time, were stopping from place to place and drinking, and became intoxicated; that the intoxication of each may be deemed the result of the action of the others so far that none of them could recover for any damages caused by the general intoxication." *Kinnie* v. *Town of Morristown,* 172 N. Y. S. 21, 184 App. Div. 408.

"If the occupants and driver of an automobile drink together and become intoxicated, each is as responsible as the driver for negligent driving, and none can recover for injuries due to such negligence." Berry on Automobiles, § 5.181.

An adult, while intoxicated, riding with others intoxicated, and knowing or having reason to know that the driver is intoxicated, is guilty of contributory negligence, which bars his recovery. *Besserman* v. *Hines,* 219 Ill. App. 606.

One cannot, with knowledge that the driver is so intoxicated as to be incompetent as a driver, remain or continue to ride in the automobile and recover damages if he is injured by the negligence of the drunken driver. Blashfield Cyclopedia of Automobile Law, § 2453.

The driver of the automobile was under no greater obligation to exercise care than the appellant was. Every one is under the duty to exercise ordinary care for his own safety. In this case the appellant voluntarily engaged in a drinking spree with his companions, and none of them is liable for the injuries to the others caused by this intoxication.

The judgment of the circuit court is, therefore, affirmed.