ALBRITTON, ADMR., v. C. M. FERGUSON & SON.

PARK v. SAME.

4-5254                                        122 S. W. 2d 620

Opinion delivered December 19, 1938.

*Sam M. Levine, O. E. Gates, Max Smith, Reinberger & Reinberger* and *E. D. Dupree, Jr.,* for appellant.
*Rowell, Rowell & Dickey,* for appellee.

BAKER, J. These two cases upon appeal furnish us with a voluminous record, a large abstract, with briefs on behalf of each of the two appellants, a brief by appellee and a reply brief by appellants. Any analysis of all this record would be too tedious for the benefit that might be derived therefrom. It would seem, however, that the two cases combined here on appeal, as they were upon trial in the circuit court, are hand made for a prolonged discussion. The ultimate conclusions that we have reached necessitate a reversal of one of the judgments rendered and a remand for a new trial, and an affirmance of the other and, since that is true, it will be our purpose to point out and state in the most concise manner available the particular errors that require a reversal, making the least comment possible.

Eight young people were in an automobile belonging to the appellant, H. F. Parker. They made a short trip from Tamo along what is known as the Tamo Pike, a paved highway to Pine Bluff. At Pine Bluff they visited several roadhouses where they had some drinks and danced. After an hour or two of pleasure, in going from one place to another and dancing, they started on their return trip from Pine Bluff to Tamo, where several of the young people were staying at the particular time, though they were there on a visit from other communities. Upon the return trip, at about 11:30 at night, they had a most serious accident in which Miss Retha Belle Albritton was injured so badly that she died, and H. F. Parker, the owner and driver of the automobile, himself seriously injured. The administrator of Miss Albritton's estate sues to recover on account of her injuries and death. Parker also sued on account of the injuries and loss sustained by him. They have alleged that the injuries were occasioned or caused by the operation of two trucks upon the highway, belonging to the appellee. One of the trucks had broken down so that it could not move on its own power and was being towed by another, the coupling, or tow-line, or cable being attached to the front truck and extending back some feet was there tied to the rear truck which was being towed toward Pine Bluff. It was alleged this tow-line was so tied or attached

to each of the trucks and that it was of such length, that as the two trucks proceeded upon the highway, to cause the drawn truck to sway or swerve in and out from a direct line as it followed the lead truck, swaying or swerving across the middle or black line in the highway; that it was without lights; and, in the darkness of the night, Parker, in driving the automobile, could not avoid being struck by the truck as it swayed from the straight driveway; and, at the time of the contact, or collision, there was a blowout of a tire on his car and the car proceeded from that point on, not in a straight line down the highway, but swerving to the left, causing the car to run into a culvert; that the car was practically destroyed, that the personal injuries and death, for which the suits were brought and maintained, were suffered.

It seems that the parties to this litigation, in the zeal, or desperation of their attempts to sustain their respective positions, have gone somewhat far afield in some respects and we call attention to it not by way of criticism, but in the hope that many of the immaterial matters, as they seem to us, might be omitted from the future trial. We mention this here and will perhaps call attention to some others as we proceed to a discussion of different steps and alleged errors in the development of the case. It is most seriously argued that the appellee was upon a highway with these trucks, at a late hour, in the darkness of the night. Of course, it is understood generally that conditions and circumstances that prevailed at the time are matters that must be considered in determining what may or what may not be negligence, but certainly it could never be negligence to make use of the highway whether in darkness or daylight; that the correlative rights of those people who drive upon the highways are equal, whether it be in the darkness of night or otherwise.

We shall state just so much of the evidence in this case as may be necessary to an understanding of the matters under discussion.

These young people as they drove about the city of Pine Bluff, and as they were seated on the way home,

after the night's pleasure and entertainment, were four in each seat. As hereinbefore stated they had been to places where they had bought some drinks, including the usual so-called soft drinks, some beer, and some gin. Appellee insisted, upon instructions, based upon the theory that at least the driver of the car was under the influence of intoxicating liquors to the extent that he was reckless or an unsafe driver; that all of them were engaged in a common purpose or joint enterprise in the search of their entertainment and pleasures and that the negligence of one was the negligence of all. Certain instructions given, certain authorities cited to sustain the certain instructions indicate clearly that theory on the part of the appellee in the trial of this case. The suit, however, brought by Albritton as administrator, is brought and prosecuted upon the theory that the young lady entered the car as a guest and remained one throughout the entire evening as they went about from place to place and upon their return home. Without going into a minute or detailed discussion of either theory presented to us by the voluminous briefs upon the subject, we suggest that both parties have read and cited to some extent the same authorities and it may be suggested that the instructions, under which the so-called joint enterprise or common purpose might be determined are taken from the announcements in Blashfield on Automobiles. The insistence on the part of appellants is that under the undisputed facts Miss Albritton must be regarded as a guest and that the instructions in regard to common purpose or joint enterprise are, therefore, abstract and should not have been given. We are unwilling to say as a matter of law that the evidence was such as not to justify the submission of this question to the jury. We think it a matter attended with some serious degree of doubt under the facts as established in the case, as to whether Miss Albritton was one engaged in a joint enterprise with Parker on the night of the injury. While it may appear to us that the guest theory is the sounder one, the facts in evidence to determine the particular status of the young lady on that fatal night may be susceptible of different interpretations by reasonable men, and that being

true there is a jury question. Certainly, if we may not say as a matter of law that she was a guest, then it was a question for the jury to determine whether she was engaged in a joint enterprise or whether she was a guest, so that question should have been, under proper instructions, submitted to the jury for determination. Our conclusion in this regard makes inevitable an adverse criticism of instructions Nos. 12 and 16, given by the court at the request of the defendant. Instruction No. 12 as given does assume that Retha Belle Albritton and H. F. Parker were engaged in a joint enterprise. The fact assumed is not undisputed. It tells the jury in effect that the burden is upon the plaintiffs to show, by a preponderance of the evidence, that their injuries and the death of Retha Belle Albritton were accomplished solely by some act of negligence of the defendant, its agents or employees. Surely, if Retha Belle Albritton were a guest in that car at the time of the injuries, and was without contributory negligence, her administrator would be permitted to recover although her injuries were caused by the concurring negligence of Parker and of the employees or agents of the appellee. It is true her administrator was not suing Parker, and for the very good reason perhaps that he was considered protected by the so-called guest act, but notwithstanding the fact that he may have been so protected, the doctrine of concurring negligence, that is to say, the negligence of Ferguson & Son, combined with the negligence of Parker might have been such as to have caused her injuries and consequent death, and, under the law prior to the enactment of the guest statute, her administrator would have been permitted to have sued either, and, no doubt, now he might sue the appellee under a proper allegation of facts presenting the issue of concurring negligence. It is not inconceivable that the manner in which the crippled truck was being towed, combined with high speed, or other negligence on the part of Parker, might have combined or concurred to bring about the young lady's injuries and death. So instruction No. 12 is not only erroneous in that it denies a right to recover on account of concurring negligence, but it is also erroneous in that it assumes, as a

matter of fact, that Parker and Miss Albritton were engaged in the so-called joint enterprise.

Instruction No. 16 as given by the court at defendant's request has the same inherent vice or defect, in that it assumes the same matter of fact and the instruction is based thereon. So it must be determined that both these instructions are erroneous.

We think it hardly necessary to cite a numerous lot of authorities illustrative of the doctrine of concurring negligence as these matters must be known to counsel as well as to the trial judge, but it seems that the importance of them did not occur at the time of the trial. Our attention has been called to the following cases: *Pine Bluff Company* v. *Whitelaw,* 147 Ark. 152, 227 S. W. 13; *Bona* v. *S. R. Thomas Auto Co.,* 137 Ark. 217, 208 S. W. 306; *Miller* v. *Fort Smith Light & Traction Co.,* 136 Ark. 272, 206 S. W. 329; *Carter* v. *Brown,* 136 Ark. 23, 206 S. W. 71; *Ward* v. *Ft. Smith Light & Traction Co.,* 123 Ark. 548, 185 S. W. 1085. There are many other cases of similar import, but these serve to illustrate the point as effectively as if supported by a dozen others.

Attention is called also to the fact that instructions Nos. 23 and 18, as given at the request of defendant, have this same defect. It is unnecessary, however, to go to a more minute analysis of these matters, as the court will, no doubt, find it proper, upon a new trial and a reconsideration of these matters, to correct errors that are now so apparent.

We call attention next to an instruction given by the court of its own motion, No. 19, and in that instruction it is evident that the court did not intend to have foreclosed or decided the question of whether the parties were engaged in a joint enterprise, as distinguished from the relation of host and guest, as the court submits to the jury a proposition to be determined as they might find from the facts, whether Retha Belle Albritton was engaged in a joint enterprise with Parker, or if she were, on the other hand, his guest. But the court was unfortunate in the method of expression employed and the announcements of the law, for these tell the jury that if the injuries and death complained of were the result of

the negligence of the Ferguson Company, or its servants, in the manner in which they were towing the truck, and that such negligence was the sole and proximate cause of the collision and the wreck of Parker's car, to find for plaintiff Albritton, unless it be determined that she was engaged in a joint enterprise with Parker. This instruction either assumes the negligence of Parker (and on that account that the joint enterprise did constitute a defense) but it is so stated that, notwithstanding the jury may determine as a matter of fact that Parker and Miss Albritton were neither negligent, yet if the jury believed from the evidence that they were engaged in a joint enterprise, this fact, that they were so engaged, was a complete defense. It takes no argument to convince anybody that such cannot be the law.

As we have proceeded in our analysis of this case and instructions given by the court, we have reached the conclusion that the basis for most of the errors complained of arises from the so-called matter of joint enterprise, which appears to be one of the conditions almost impossible to define or describe as distinguished from the relation of host and guest under ordinary conditions.

The court's instruction No. 18, given at the instance of the court, is, perhaps, correct as far as it goes. While we have approved in some of our cases the announcement in Vol. 4, Chapter 65, p. 171, § 2372, of Blashfield on Automobiles, we have considered that matter in the case of *Lockhart* v. *Ross,* 191 Ark. 743, 87 S. W. 2d 73, and announced our conclusions, a reference to which makes it unnecessary to set forth or repeat our holding.

So it must appear that this question, so frequently referred to as ''common purpose,'' or ''joint enterprise,'' or ''joint adventure,'' should be defined according to the definitions that we have heretofore given. If upon a new trial the court may not determine, as a matter of law, from undisputed evidence whether the relation between the parties, the driver of the automobile and Miss Albritton, was such as to be classed as a joint enterprise, or whether they were merely host and guest, and it be necessary to a proper conclusion, on account of disputed evidence, or evidence of such character that reasonable

men might differ as to its effect and value, the court will in such event submit to the jury the proposition and give instructions to determine the relative rights of the parties as their relations may have been determined arising out of this question as to joint enterprise, or host and guest.

We cannot think it profitable to seek out each instruction for a critical analysis and determination to aid the court upon a new trial. In fact we are convinced it is wholly unnecessary to do so and would unduly extend this opinion.

The appellants argue that instructions given by the court upon the matter of intoxication are abstract and that there is no evidence to justify the giving of such instructions. We agree with this theory of the appellants, at least, to the extent that we think it apparent under the state of the record, as presented here that there is nothing from which the jury might have inferred Miss Albritton was intoxicated, or, at least, under the influence of liquor to the extent that such condition had anything to do with the driving or wrecking of the car, inasmuch as Parker was the driver and she was merely seated by him in the car at the time of the accident.

It is not shown that Miss Albritton did very much drinking, but even if she had been drinking there is no development of the case that tends in the least to show that this might have affected the driving of the car, nor do we think that such drinking that she may have done at the time shows or establishes a condition as relates to her, similar to that in the Chitwood Case. *Sparks* v. *Chitwood Motor Co.*, 192 Ark. 743, 94 S. W. 2d 359.

The foregoing statements are directed almost exclusively to the case of *R. E. Albritton, administrator, v. C. M. Ferguson & Son.*

It is necessary now to discuss the alleged errors in the case of *H. F. Parker, appellant, v. C. M. Ferguson & Son, appellee.* It is urged most seriously in this phase of the case that all instructions given by the court in regard to the drinking were abstract and that it was error on that account to give them. We are not in accord with that contention. It is also argued that it was error to permit Hooker to testify as to statements made to him by Park-

er, as Parker explained that he was intending to take the girls home as quickly as he could.

The only other substantial objections made are as to the dying declarations of Miss Albritton, the alleged privileged communications, and instruction No. 19, given at the request of the defendant. These matters will be disposed of and our conclusions stated in the shortest order possible.

Parker was the driver of the car and had the responsibility for its control and operation. According to the testimony of the appellants, at least, whatever drinking he did might be regarded very differently by a jury trying this case from what counsel for appellants argue as a conclusion from evidence, as a basis for a rejection of the instructions in regard thereto. The record is not free from evidence that Parker was not wholly unaffected by the liquor he had drunk. The remark that he made to witness Hooker and his declaration to the effect that he was going to get rid of the young ladies as soon as he could might well have been the language of a gentleman affected with drink, and, by way of parenthesis, we might say that as to Parker this evidence of Hooker was admissible, but it should have been received under proper admonition of the court limiting and applying this testimony to Parker. At the time Parker made this remark, on the same occasion when he went to the car where Hooker was found, he picked up that gentleman's glass of buttermilk, drank it and dropped a nickel in the plate to pay for it. There is no explanation for that conduct by him or the other witnesses, if, in fact, under all the circumstances, it needs any. This is said in consideration that there is evidence that the young ladies did not do much drinking. One of the young men did not drink any. The drinking done by the young ladies was of soft drinks and beer for the most part. A bottle of gin, 4/5 of a quart, was disposed of by the party and there is some evidence that another bottle of gin was also drunk by them. Most men know that some people can drink what others consider large quantities without being outwardly affected thereby.

The foregoing statement testified to by Hooker in giving Parker's explanation of the reason he was speeding his guests home, if they were guests, in fact, was competent against Parker as indicating not only his condition, but the rapidity with which he was discharging his social obligations. Parker himself says that he was driving at a moderate rate of speed, perhaps thirty-five or forty miles an hour. He did not see the truck that was being towed. He says that he was driving straight ahead when the truck must have swerved over and struck the car he was driving. If that statement be true, althought it is seriously doubted, we cannot find any reasonable excuse for his not having seen the truck that was towed by the one that he says he did see. There were four in a seat. Parker is a large man, weighing approximately 200 pounds. If he was sitting straight in the car seat, he occupied a considerable portion of that front seat. If he was crowded into the corner, as he must have been, he was not so turned that he could observe objects immediately to his left without turning his head away from the usual or normal position.

These are all matters which the jury had a right to consider and which they no doubt did consider, together with other facts that are in no sense in dispute. Young Jimmie Harris was a member of this party. He was the only one who did not drink. He was acquainted with the road over which they were driving when the wreck occurred and testified he knew the difference between fast and slow driving. At the time of the accident they were going approximately seventy-five miles per hour. The car swerved when it went around a curve near Wright's filling station; that he began to fear for his safety. Someone, he did not remember who it was, asked Parker to slow down. They saw vehicle lights ahead, the ones upon the truck. They passed the first at the same speed at which the car had been traveling. Just before hitting the second truck the car seemed to swerve off the highway onto the shoulder and the driver evidently turned back to the left and that was when the collision occurred. It was only a glancing lick and the real trouble came when the car hit the culvert and went into a ditch.

This witness testified as to many other matters, but we have stated the above because it is in conformity, we think, with the effect of the testimony of another witness, Hillary Rudder. Rudder was city engineer of the city of Pine Bluff. He went there to the scene of the accident, made a survey of the situation where the wreck occurred, drew a plat, and made measurements. He testified that the road was eighteen feet wide. On each side was a ditch beyond the shoulder of the road. He found the skid marks upon the highway. He identified by a line indicating where the car left the road, as shown by the impression the wheels made in the grass and weeds along the highway. The line marked by the travel of the car was a straight line, approximately 499 feet long.

Mr. J. T. Stone, a man who lived near that part of the highway where the accident took place, testified that he was in bed when he heard the collision; that he got up and dressed and went out upon the highway, and that he saw two trucks in front of his house. About 200 yards or better down the road, in a ditch, was a car, and he saw the wheels turning in the air. He called an ambulance. The next morning he traced the tracks of the car that had been in the wreck and saw the marks of the tires all the way down to the place where it had hit and went into the ditch. He identified photographs. There were some skid marks at the place where the accident took place. When he had offered his assistance and was helping people get out of the car, he smelled alcohol on the breath of Parker and McCombs.

The instruction that is seriously objected to by counsel for Parker is instruction 19, given on behalf of the defendant, and that part to which the objection is particularly directed is that the court told the jury "In order, therefore, for you to return a verdict for the plaintiffs in these cases it will be necessary for you to find from the evidence not only that the driver of the defendant's truck was negligent, but also that the plaintiff H. F. (Red) Parker and the deceased, Retha Belle Albritton, were not negligent, or if they were negligent to the slightest degree, that such negligence did not contribute to cause his or her injury."

The objection urged is that this instruction put upon the plaintiff, Parker, the burden of proving there was no contributory negligence, the burden of proving which, of course, rested upon the defendant. We do not think this instruction is susceptible of that interpretation and this is particularly true in the light of other instructions given upon the same point and not in conflict therewith. One of these is No. 6, given by the court upon its own motion. The court, in explaining the issues to the jury in the case of *Parker* v. *Ferguson,* said:

"The main issues for you to determine are: Whether or not the injuries of Parker were caused solely by the negligence of the agents and servants of Ferguson in the operation of the trucks and trailer, or whether or not the injuries of Parker were caused solely by the negligence of Parker in the manner in which he was driving his automobile at the time, or whether or not the negligence of Parker, if any, combined or concurred with the negligence, if any, of the servants of Ferguson to cause or contribute to Parker's injuries." It appears that the issues were clearly and directly presented to the jury and that the jury must have understood these issues as defined, particularly as to the rights of Parker.

We do not think there was prejudicial error in this submission of Parker's case. If he was guilty of negligence that contributed to or caused his injury, he did not have a right to a recovery. The jury's verdict, under a submission of these facts above stated, found against him and that verdict is conclusive upon appeal, provided there is no error that shows an improper submission.

In addition to these matters as determined by the jury, we think it may be said, without an invasion of that field which is perfectly within the realm of the jury to find and determine facts, that the physical facts in this case demonstrate beyond any doubt, that Parker, the driver of the car was negligent in its operation at the time of the collision and accident.

The proof of the engineer is undisputed that the car ran on for a distance of approximately 500 feet after the collision. It then hit the culvert with so much force as to wreck the car which had to that time only suffered

the blow-out of a casing. It is not disputed that after Mr. Stone heard the crash, he dressed and went 200 yards and found the car with the wheels in the air still spinning. If the car were driven at that moderate rate of speed, which Parker testified to in his evidence, then he was negligent in not stopping it before this crash occurred. The car had been driven, according to his testimony only five or six thousand miles. It was in good condition. Traveling at thirty-five or forty miles it could have been stopped at not more than half the distance it ran after the collision with the truck. There was a wide margin of safety if there had not been unusual speed. The engineer's evidence corroborates and fortifies what was said by Jimmie Harris who fixed the rate of speed at approximately seventy-five miles an hour.

These physical facts and conditions presented, without substantial dispute or controversy, in regard to their accuracy, conclusively determined that Parker was not entitled to recover.

The verdict should have been directed by the court against Parker. That being true, any instruction not going that far was too favorable and not prejudicial.

The foregoing disposes of the most important of the alleged errors. The only other matters are in regard to the dying declarations and the suggested privileged communications.

It is argued that the court committed error in the matter of permitting the nurse who waited on Miss Albritton to testify in regard to statements she had made as a dying declaration; that this violated two rules of evidence arising out of recent legislation, Pope's Dig., § 5201, one that it was not proper to permit the nurse to detail the dying declarations of Miss Albritton. Without considering the competency of her statement as made, let us suggest that the dying declarations become competent by reason of a declaration of the law that formerly existed as re-enacted by the Legislature in 1935. No doubt it was the purpose of this legislation to open a way to get in proof otherwise held inadmissible. Now, it would seem sufficient to say that since the Legislature has made these declarations admissible in civil cases, we

have no hesitancy in saying that either party under proper allegations may use such dying declarations for purposes set forth in the act after proper foundation is laid. We suggest there may be a difference, however, in attempting to prove facts by such declarations and in the presentations of mere conclusions.

The other error suggested is that the court improperly permitted the nurse to testify, the objection being that since she was the nurse communications made to her and in her presence were privileged. It is argued that comparatively recent legislation, see § 5159, Pope's Dig., to the effect that if a patient shall offer his physician as a witness the other party may in like manner call other physicians, regarding the privilege as having been waived. The theory of appellants is that although they put on a physician, appellee could not offer any one who was not a physician, or, if they had put on a nurse, the appellants could not have offered a physician. We think that interpretation of the statute is too technical to serve the purpose no doubt intended by the Legislature. Without an attempt or effort at construction we merely declare our conclusion.

It had heretofore been the law that certain communications to or with doctors or nurses are privileged. Occasions are not infrequent in which perhaps two or three physicians, or maybe more, may have examined a patient and have determined the extent and effect of his injuries. Yet they would not be permitted to testify and the so-called injured party might take or choose such physician or party as he deemed most favorable to him in the statement of the nature, extent and effect of his injuries, and at the same time each of the other attending physicians be equally competent to declare the result of their investigations and findings. So it was deemed to the best interest of the public to leave the question of privileged communications entirely within the control of the injured party; that he need not call any physician to testify as to what his findings were, in his professional relationship with him, but should he deem it necessary or proper to do so, when he shall have exercised that privilege and called his physician to testify in that re-

spect, his conduct would operate as a waiver of the privilege, and opposing side might call others who had occupied the exact and same relation with the injured party, and it would make no difference in that view of the case, whether the privileged communication was one in the mind or recollection of a doctor or nurse. If the litigant waived the privilege, he waived it as to all nurses or physicians. Such must have been the intention of the Legislature and we so declare it.

It must not be understood upon a trial anew, in the Albritton Case, that we have approved instruction No. 19, as requested by defendant. While we do not think the language is susceptible of the interpretation put upon it by counsel for appellants, there is no doubt but that it might be improved and the suggested and supposed error be entirely eliminated.

It need not be argued that contributory negligence is an affirmative defense, the proof of which rests upon the defendant unless it appears otherwise.

For the errors indicated the judgment in the case of *Albritton* v. *Ferguson & Son* is reversed and remanded for a new trial.

The judgment in the case of *Parker* v. *Ferguson & Son* is affirmed.