ÆTNA LIFE INSURANCE COMPANY,
Appellant,

v.

Victor G. GORDY by Mrs. V. G. Gordy,
his next friend, Appellee.

Victor G. GORDY by Mrs. V. G. Gordy,
his next friend, Appellant,

v.

ÆTNA LIFE INSURANCE COMPANY,
Appellee.

Nos. 15748, 15759.

United States Court of Appeals
Eighth Circuit.

Oct. 4, 1957.

As Modified on Denial of Rehearing
Oct. 28, 1957.

E. L. McHaney, Jr., Little Rock, Ark. (John M. Lofton, Jr., James M. McHaney, G. Thomas Eisele, Owens, McHaney, Lofton & McHaney, Little Rock, Ark., were with him on the brief), for Aetna Life Ins. Co.

H. B. Stubblefield, Little Rock, Ark., for Victor G. Gordy by Mrs. V. G. Gordy, his next friend.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

There was diversity of citizenship and federal jurisdiction in this case.

This action was brought originally by Victor G. Gordy but as it was claimed that he was mentally incompetent it was proceeded with on his behalf in the name of his wife as his next friend without objection.

On or about October 13, 1928 the insurance company defendant had issued two five thousand dollar life insurance policies to Mr. Gordy, each containing identical agreements to pay an income of $50.00 per month to the insured and to waive premium payments in the event he became totally and permanently disabled through disease prior to age 60.

Each of the policies provides that no such benefits are payable for any period more than six months prior to the date that evidence of such disability satisfactory to the company was received at its home office.

Mr. Gordy became 60 years old on April 13, 1952 and continued to pay the premiums on the policies until and through 1955. On December 28, 1955 he made claim to the company that he had become totally and permanently disabled in November, 1949, more than two years before he reached the age of 60 and on March 19, 1956 he brought this action to recover the amount of premiums he had paid after the alleged accrual of his disability; the amount of the disability benefits as provided in the policies for the period between the alleged accrual of disability and commencement of the action; twelve per cent damages for nonpayment by the company; attorneys fees, interest and costs.

The insurance company, by amended answer, admitted that Mr. Gordy became totally and permanently disabled from physical causes before attaining the age of sixty years and alleged that on or about the 12th day of April, 1956, it had offered to recognize his total and permanent disability as of a date six months prior to the date of his execution of proof of his disability; to pay benefits accrued after said date; to return all premiums paid after said date and to continue the monthly benefits and waiver of premiums so long as Mr. Gordy should live and continue to be totally disabled as defined in the policies. It was denied that Mr. Gordy had been, since November, 1949, continuously mentally impaired to the extent that he was relieved from the necessity of giving evidence of disability to the company in order to receive the benefits provided in the insurance policies.

On the jury trial of the case the court instructed that "the burden of proof was on the plaintiff to show by the preponderance of the evidence that he was mentally incompetent continuously from November, 1949 to December 28, 1955, to the extent that he was unable to carry on the ordinary affairs of life and his mind was incapable of sustained effort so that he was unable to comprehend such affairs as needed his attention." "Therefore, if you find that under [that test] the plaintiff did not have such mental competency as there required you will return a verdict for the plaintiff."

The jury returned a general verdict for the plaintiff and plaintiff had judgment thereon for $11,842.32 with interest and cost plus an attorney's fee in the sum of $5,000.00. This appeal is taken by the insurance company to reverse the judgment.

The record shows that the plaintiff introduced the testimony of three doctors to support the allegations of his complaint concerning his total and permanent disability and his mental incapacity to make claim and proof to the insurance company; namely that of Dr. Woodbridge E. Morris who practices internal medicine; Dr. Clyde Dalrymple who is an osteopathic physician and that of Dr. Terry Rodgers whose training since 1945 has been in psychiatry.

It appears that when Mr. Gordy became afflicted in November, 1949, with the sickness referred to in his complaint, the osteopathic doctor Dalrymple, was called to attend him and continued as the only doctor attending him until January 14, 1950. Finding that Mr. Gordy did not respond to the treatment administered by him, Dr. Dalrymple referred Mr. Gordy to Dr. Woodbridge E. Morris and Dr. Morris attended and prescribed for Mr. Gordy over a period of several months. While under Dr. Morris' care Mr. Gordy received X-ray and radium treatment for a mouth ulcer which interfered with his eating, chewing his food, and swallowing and it was difficult to get him to have enough nourishment. His physician sent tissue removed from his mouth to the Mayo Clinic at Rochester, Minnesota and the pathologist there confirmed the diagnosis of cancer. Accordingly Mr. Gordy went to the clinic in February and was examined and treated there during the following periods:

from February 5, 1951 to March 8, 1951; May 9, 1951 to May 11, 1951; August 2, 1951 to August 13, 1951; January 1, 1952 to January 25, 1952; April 2, 1952 to April 9, 1952; August 19, 1952 to August 27, 1952; November 19, 1953 to November 25, 1953; January 5, 1955, for one day.

Dr. Dalrymple testified as to Mr. Gordy's mental state that he was unable to concentrate and had unjustified anxiety, fear and apprehension, was depressed and would get nervous and a tremor would appear on his arm.

Dr. Morris found him in a state of anxiety and that he was an irresponsible individual due to his state of fear. In the opinion of Dr. Morris, Mr. Gordy was mentally incapable of carrying on the ordinary affairs of life and incapable of such sustained mental effort as would enable him to comprehend such affairs as needed his attention during the whole period from November 26, 1949 to the date of trial.

The psychiatrist, Dr. Rodgers, gave it as his opinion that Mr. Gordy was and had been since November, 1949, permanently insane, using as the definition for "insanity" a serious disorder of the mind or mental condition and that he was and had been since that date mentally impaired to the extent of being incapable of carrying on the ordinary affairs of life. Dr. Rodgers saw Mr. Gordy three times and based his opinion upon his observation and examination of Mr. Gordy and the history obtained from Dr. Dalrymple. The name given by Dr. Rodgers to the disabling ailment that Mr. Gordy now suffers from, and has and will continuously suffer from, is psychosis with cerebral arteriosclerosis.

██ The testimony of the three doctors considered with the other testimony for plaintiff was sufficient to afford prima facie support for the allegation of the complaint that Mr. Gordy was incapable by reason of total permanent disability and mental incompetency of attending to the reporting of or furnishing proof of his condition under the policies sued on during the period from 1949 to 1955 and the defendant made no motion for verdict or contention to the contrary.

Defendant had taken the deposition of Dr. Frederick A. Figi of Rochester, Minnesota, a senior consultant in the section on plastic surgery of the Mayo Clinic and offered that doctor's deposition in evidence in support of its defense.

Dr. Figi testified in the deposition that he saw Mr. Gordy daily on Mr. Gordy's visits to the Mayo Clinic and he described the condition of Mr. Gordy on his arrival at the clinic and the examinations, diagnosis, operations, treatments and course of his ailments and condition until he was last at the clinic in January of 1955, when "the patient looked well generally and had no evidence of cancer in his mouth." Dr. Figi gave it as his opinion that Mr. Gordy was totally disabled and unable to carry on his business from February 5, 1951, when the doctor first saw him, to November 19, 1953, but that he was able physically to carry on his business subsequent to November, 1953. He was not totally disabled or unable to carry on his business at the time he was last at the clinic in January, 1955. By reason of his attendance upon Mr. Gordy Dr. Figi had the opportunity and was able to form an opinion as to Mr. Gordy's mental ability and ability to reason logically and to understand and comprehend the ordinary affairs of life. The doctor's testimony was that during the period from February 5, 1951 to November 19, 1953, Mr. Gordy experienced a great deal of pain and was in such a weakened general condition that he was totally disabled. Subsequent to November 19, 1953, he was sufficiently recovered to carry on his business and was capable mentally of carrying on the ordinary affairs of life and to comprehend such affairs as needed his attention.

The plaintiff objected to the introduction of Dr. Figi's deposition on the ground that the information therein was privileged and inadmissible in evidence under Arkansas Statute 1947, Section 28–607, which is as follows:

"Physicians and nurses—Exemption.—Hereafter no person authorized to practice physic or surgery and no trained nurses shall be compelled to disclose any information which he may have acquired from his patient while attending in a professional character and which information was necessary to enable him to prescribe as a physician or do any act for him as a surgeon or trained nurse. Provided, if two or more physicians or nurses are, or have been in attendance on the patient for the same ailment, the patient by waiving the privilege attaching to any of said physicians or nurses, by calling said physician or nurse to testify concerning said ailment, shall be deemed to have waived the privilege attaching to the other physicians or nurses."

Plaintiff contended that the proviso of the section by which a waiver of the privilege results from calling one doctor to testify where two or more have attended was not applicable to the defendant's offer of Dr. Figi's deposition. Although the plaintiff had adduced the testimony of two physicians who had been in attendance on Mr. Gordy for ailments from which Mr. Gordy suffered on and after November 26, 1949, and so had waived the privilege attaching to them, it was plaintiff's theory that the "ailment" upon which Mr. Gordy relied in the lawsuit to excuse his failure to make claim for total disability was "serious disorder of the mind," and that Dr. Figi's treatment was for cancer "inside the left cheek" and that the physicians whose testimony plaintiff had offered had not been called to testify concerning the same "ailment" that was the subject of Dr. Figi's testimony. Plaintiff's counsel stressed that when Dr. Morris was testifying as a witness for plaintiff, counsel admonished him, "Now, doctor, * * * in case you run * * * into any physical matter concerning Mr. Gordy's face, I do not want you to testify about that; I want you to skip that." The exclusion of Dr. Figi's deposition by the court was in accord with plaintiff's theory. Defendant insists it was erroneous and we agree.

■■ At common law there was no privilege as to communications between physician and patient and in Arkansas the right to claim privilege rests on the statute. Albritton v. C. M. Ferguson & Son, 1938, 197 Ark. 436, 450, 122 S.W.2d 620, 626; Wimberley v. State, 1950, 217 Ark. 130, 228 S.W.2d 991, 992. Prior to the amendment of the section to its present form an injured party in an action for damages for personal injuries who had been examined by several physicians might choose to call as a witness such of the physicians as he found to be favorable to him and exclude from testifying other attending physicians equally or more conversant with the facts. But the intent of the amendment was to prevent that unfair course. Where, as in this case, the issue is as to the ailment and condition of a plaintiff who has been treated for his condition or ailment by several physicians, he may not under Arkansas law waive the privilege and call as witnesses in his behalf two of the physicians whose findings are favorable to his cause and then assert the privilege and exclude the other physician from testifying. To proceed in that way would manifestly not tend to disclose the true facts. It plainly appears from the evidence here that Dr. Figi treated Mr. Gordy over a longer period of time than either of the other physicians who testified and was in a better position to know and testify as to his condition than the other physicians. His opinion connected his patient's mental condition, which was in issue, with the cancerous condition that ailed him and it does not appear that either of the doctors called as witnesses by plaintiff intended to assert that the patient's cancer and his mental condition were not connected. Both dwell on his state of fear, anxiety and apprehension and neither denied connection between that mental state and the cancer.

The Supreme Court of Arkansas described the purpose of the statute in

question, as amended, and gave it a liberal interpretation in Albritton v. C. M. Ferguson & Son, supra [197 Ark. 436, 122 S.W.2d 627].

In that case the plaintiff introduced the testimony of a physician and the defendant then introduced the testimony of a nurse over the objection of the plaintiff on the ground of privilege. The court said:

"We think that interpretation of the statute is too technical to serve the purpose no doubt intended by the legislature. Without an attempt or effort at construction we merely declare our conclusion.

"It had heretofore been the law that certain communications to or with doctors or nurses are privileged. Occasions are not infrequent in which perhaps two or three physicians, or maybe more, may have examined a patient and have determined the extent and effect of his injuries. Yet they would not be permitted to testify and the so-called injured party might take or choose such physician or party as he deemed most favorable to him in the statement of the nature, extent and effect of his injuries, and at the same time each of the other attending physicians be equally competent to declare the result of their investigations and findings. So it was deemed to the best interests of the public to leave the question of privileged communications entirely within the control of the injured party; that he need not call any physician to testify as to what his findings were, in his professional relationship with him, but should he deem it necessary or proper to do so, that when he shall have exercised that privilege and called his physician to testify in that respect his conduct would operate as a waiver of the privilege, and opposing side might call others who had occupied the exact and same relation with the injured party, and it would make no

difference in that view of the case, whether the privileged communication was one in the mind or recollection of a doctor or nurse. If the litigant so waived the privilege, he waived it as to all nurses or physicians. Such must have been the intention of the legislature and we so declare it."

We think that the objection of the plaintiff in the present case to the deposition of Dr. Figi is fully met by the reasoning of the Arkansas court in the case cited. Here Dr. Figi's deposition was offered by defendant as evidence of the sanity and sound mental condition of Mr. Gordy. The doctor had acquired the information through his attendance on the patient. The other doctors were previously called to establish mental incompetency. They had also acquired their information while they were in attendance on the patient. To receive the testimony of the doctors the plaintiff called and exclude that of the doctor called by the defendant was in direct conflict with the proviso of the statute. "If two or more physicians * * * have been in attendance on the patient for the same ailment, the patient by waiving the privilege attaching to any of said physicians * * * by calling said physician concerning said ailment shall be deemed to have waived the privilege attaching to the other physicians * * *."

Evidence was taken on the trial of this case which has been considered but is not discussed because we find the error in excluding the deposition of Dr. Figi was manifestly prejudicial to defendant and prevented a fair trial. "Prejudice is presumed when a party is denied the right to use a competent witness." Powell Bros. Truck Lines, Inc., v. Barnett, 194 Ark. 769, 109 S.W.2d 673, 674; Missouri Pacific Truck Company v. Moody, 199 Ark. 483, 134 S.W.2d 868, 871. We express no opinion upon other incidents of the trial, but reverse the judgment in its entirety on account of the error discussed. Reversed for new trial not inconsistent herewith.

No. 15,759

This so called cross appeal is stated to be prosecuted by the appelleee in No. 15,748, supra, to enable said appellee to ask this court to allow her a reasonable attorney's fee in this court and to permit said appellee to urge that her request for peremptory instruction in her favor should have been given. We find the cross appeal to be without merit and the same is dismissed.