HURLEY *v.* PEEBLES.

5-3380                                        384 S. W. 2d 261

Opinion delivered November 30, 1964.

*Wright, Lindsey, Jennings, Lester & Shults,* By: *John D. Eldridge,* for appellant.

*Fletcher Long* and *Dungan* and *Daugherty,* for appellee.

JIM JOHNSON, Associate Justice. This appeal involves attempted imputation of negligence in a suit for personal injuries sustained by a back seat passenger in the rear car of a rear end collision.

Early on the morning of September 20, 1960, about 5:00 A.M., a car driven by Alpheus Hubbard going south on Highway 17 collided with the rear of a truck near Shoffner eleven miles south of Newport. The truck was being driven by Donaciano Vasquez, an employee of W. F. "Buck" Hurley (who has since died). Passengers in the Hubbard car were appellee Edward Eugene Peebles and Joe F. Stobaugh. Hubbard and Stobaugh, in the front seat, died as a result of their injuries and appellee, who was asleep on the back seat of the car, was injured. (Another case resulting from this collision is *Stobaugh* v. *Hubbard,* 234 Ark. 917, 355 S. W. 2d 283.)

Appellee filed suit in Woodruff Circuit Court on February 25, 1963, against appellant Gladys Hurley, executrix of the estate of W. F. "Buck" Hurley, deceased. The complaint alleged, *inter alia,* that appellee was a passenger in Hubbard's car when it collided with the truck driven by Vasquez, an employee and agent of Hurley in the course of his, Vasquez' employment. The complaint contained detailed allegations of Vasquez' negligence, appellee's injuries and damages, and prayed judgment for $35,145.00 (including $24,600.00 for past and future loss of earnings). Appellant answered, (1)

denying appellee's allegations, (2) alleging that appellee was negligent in failing to exercise ordinary care for his own safety as a passenger and that such carelessness caused or contributed to his damages, and (3) pleaded that Hubbard was negligent in operating his vehicle and that Hubbard's negligence is imputed to appellee for the reason that Hubbard and appellee were engaged in a joint enterprise with an equal right to direct and control Hubbard's vehicle, and that Hubbard's negligence caused or contributed to appellee's damages.

Appellee amended his complaint on August 8, 1963, alleging additional injuries and damages based on a physical examination made in July, 1963, and increased his prayer for damages to $67,545.00, which appellant answered and denied.

Trial was had on February 5, 1964, and after deliberation the jury returned its verdict for appellee in the sum of $28,583.00. From judgment on the verdict comes this appeal.

For reversal appellant urges that the trial court erred in holding as a matter of law that negligence, if any, of Hubbard would not be imputed to appellee, and in refusing to submit that issue to the jury.

Appellant offered several instructions on imputation of negligence, the first of which was:

"Defendant's requested instruction No. 4.

"If you find from a preponderance of the evidence that Alpheus Hubbard was under the influence of intoxicants to such an extent that his ability to drive a vehicle was impaired, or that he was operating his vehicle at an excessive rate of speed under the circumstances, then you may take this into consideration in determining whether or not Alpheus Hubbard was negligent and whether or not such negligence, if any, was a proximate cause of the collision, injuries and damages."

The court refused this instruction, stating:

742

"Defendant's requested instruction No. 4 is refused for the reason that the court has held that, as a matter of law, the testimony in this case is insufficient to establish joint venture and that, therefore, the negligence of Alpheus Hubbard would not be imputed to the plaintiff in this case."

The court gave appellee's requested instruction No. 4 as follows:

"You are instructed that there is no competent evidence in this case that the plaintiff Peebles was engaged in a joint venture with the decedent Hubbard at the time of the collision. Therefore, Hubbard's negligence, if he was guilty of any negligence, would not be imputed to the plaintiff in this case."

And the court then instructed the jury orally as follows:

"As you have already been told, a joint venture was alleged in the answer and some proof was offered along that line, but the court holds that there is no competent evidence in this case to establish a joint venture."

to which instruction appellant objected, urging that under the evidence in this case the jury should be instructed, as a matter of law, that they were engaged in a joint venture, or at least the court should submit the issue of whether they were engaged in a joint venture to the jury.

Joint venture, variously called joint enterprise, common purpose and joint adventure, has been the subject of confusion in this state, and we therefore seize upon this opportunity to attempt to clarify the law. There is *no* confusion, however, about the basic law of joint enterprise.

"This court has consistently held that in order for a joint enterprise to arise two fundamental and primary requisites must concurrently exist, to-wit: a community of interest in the object and purpose of the undertaking in which the automobile is being driven and an equal right to direct and govern the movements and conduct of each other in respect thereto. If either or both of these

elements is absent, there is no joint enterprise." *Woodard* v. *Holliday*, 235 Ark. 744, 361 S.W. 2d 744.

The confusion has arisen relative to application of the law and in erroneous use of the term; that is, mislabeling apparent "assumption of risk" as "joint enterprise." This mislabeling has evolved into what could be called the "drunken joint enterprise" theory. This unique "theory" seems to have resulted from a misconception of the language in *Albritton* v. *Ferguson,* 197 Ark. 436, 122 S.W. 2d. 620. Careful scrutiny of *Albritton* reveals that this opinion fails to say that which subsequent decisions appear to say it says on joint enterprise. In *Albritton* there was testimony that eight young people had gone in one car to Pine Bluff where they visited road houses, drank[1] and danced, the collision occurring on their way home. The Supreme Court, after finding that the trial court erred in giving an instruction which assumed as a matter of law that Parker (the driver) and Miss Albritton were engaged in a joint enterprise, concluded its discussion on this matter as follows:

"So it must appear that this question, so frequently referred to as 'common purpose,' or 'joint enterprise,' or 'joint adventure,' should be defined according to the definitions that we have hereaafter given. If upon a new trial the court may not determine, as a matter of law, from undisputed evidence whether the relation between the parties, the driver of the automobile and Miss Albritton, was such as to be classed as a joint enterprise, or whether they were merely host and guest, and it be necessary to a proper conclusion, on account of disputed evidence, or evidence of such character that reasonable men might differ as to its effect and value, the court will in such event submit to the jury the proposition and give

---

[1] The court distinguished *Albritton* from the *Chitwood* case, *infra*, as follows:

"It was not shown that Miss Albritton did very much drinking, but even if she had been drinking there is no development of the case that tends in the least to show that this might have affected the driving of the car, nor do we think that such drinking that she may have done at the time shows or establishes a condition as relates to her, similar to that in the Chitwood case. *Sparks* v. *Chitwood Motor Co.,* 192 Ark. 743, 94 S.W. 2d 359."

instructions so as to determine the relative rights of the parties as their relations may have been determined arising out of this question as to joint enterprise, or host and guest."

A divided court in *Missouri Pacific Transportation Co.* v. *Howard,* 201 Ark. 6, 143 S.W. 2d 538, reversed a judgment in favor of appellee passenger because of erroneous instructions. Before discussing the instructions, the court stated that there was sharp conflict in the testimony, appellee's evidence being that the driver and passengers were sober, appellant's being that they were drunk, "in the car . . . driving around on pleasure bent," and then said, "If this testimony is true [i.e., all inebriated], the parties in the car were engaged in a joint enterprise, and the negligence of the driver would be imputed to each of them. *Albritton* v. *Ferguson* [supra]." To set the record straight, if the group, appellee, the driver and other passenger, were drunk, appellee may have "assumed the risk" [*J. Paul Smith Co.* v. *Tipton,* 237 Ark. 486, 374 S.W. 2d 176], but the facts reflected in the *Missouri Pacific Transportation Co.* v. *Howard* opinion, *supra,* do not meet the criteria of joint enterprise as we understand them in the law of Arkansas. *Woodard* v. *Holliday, supra.*

In *Wilson* v. *Holloway,* 212 Ark. 878, 208 S.W. 2d 178, the court cites *Missouri Pacific Transportation Co.* v. *Howard, supra,* and *Albritton* v. *Ferguson, supra,* as authority for the "drunken joint enterprise" theory, and then states:

"In the case of *Sparks* v. *Chitwood Motor Co.,* 192 Ark. 743, 94 S.W. 2d 359, Justice Mehaffey approved the following statement from Berry on Automobiles, § 5.181: 'If the occupants and driver of an automobile drink together and become intoxicated, each is as responsible as the driver for negligent driving, and none can recover for injuries due to such negligence."

The logic in this quotation is well-founded in the law of assumed risk and was ample basis for the holding in

*Wilson* v. *Holloway* without reference to the dicta on "drunken joint enterprise." See *Sparks* v. *Chitwood Motor Co., supra.*

The true test of joint enterprise has been succinctly stated as follows:

"Any one of several persons engaged in an enterprise is barred from recovery against a negligent defendant by the contributory negligence of any other of them if the enterprise is so far joint that each member of the group is responsible to third persons injured by the negligence of a fellow member." Restatement, Torts, § 491 (1934).

In the case at bar there was no substantial evidence that Hubbard was intoxicated on the journey home. Under the facts here obtaining, the test would be whether Peebles, asleep on the back seat, would have been liable to Vasquez or Hurley for negligent driving of Hubbard. Clearly he would not.

Affirmed.