Leonard BEARDEN, Administrator *v.* ARKANSAS
TRANSPORT COMPANY et al

5-5621                                     471 S.W. 2d 748

Opinion delivered October 25, 1971

*Fulk, Lovett & Mayes,* for appellant.

*Terrel, Rawlings, Matthews & Purtle,* for appellees.

CARLETON HARRIS, Chief Justice. This appeal relates to the legal doctrine of joint enterprise. On November 2, 1965, a collision occurred near El Dorado on Highway 167 between a northbound tanker truck owned by appellee, Arkansas Transport Company, and driven by A. E. Greer, and a southbound Mercury automobile owned and driven by Lois Ann Phelan, and in which Jack Wesley Johnson was riding. As a result of the collision, Greer, Miss Phelan, and Johnson were all killed, and this suit was instituted by Arkansas Transport, and the widow and child (by her guardian) against the administrator of the estate of Jack Wesley Johnson, the passenger in the Phelan automobile. The complaint, together with the amendment, asserted that Johnson and Miss Phelan were both intoxicated, and were on a joint enterprise at the time of the collision; that the negligence

of Miss Phelan was imputed to Johnson. After the filing of an answer denying the allegations, the case proceeded to trial and was submitted to the jury on interrogatories. Interrogatory No. 1 inquired whether the jury found that Johnson and Miss Phelan were engaged in a joint enterprise at the time of the accident, and this interrogatory was answered "Yes". Interrogatory No. 2 inquired whether the jury found that Lois Ann Phelan was guilty of negligence which was a proximate cause of the accident, to which the jury answered "Yes". Interrogatory No. 3 inquired whether the jury found Johnson to be guilty of negligence which was a proximate cause of the accident, and this inquiry was answered "No". The jury returned a nine man verdict awarding the widow and daughter the sum of $5,000 as damages, and likewise awarding Arkansas Transport Company the sum of $5,000 for property damage. From the judgment so entered, appellant brings this appeal. For reversal, it is simply asserted that there was no substantial evidence that a joint enterprise existed between Lois Ann Phelan and Jack Wesley Johnson at the time of the accident.

Testimony reflected that the truck driven by Greer was traveling 45 or 50 miles per hour, and that the Phelan automobile was moving at "a terrific speed" at the time of the collision; further, that the truck was on its right side of the highway and the Mercury automobile was straddling the center line. Appellant does not question in his brief that the wreck was caused by the negligence of Miss Phelan. Following the collision, blood tests were made from blood samples of Miss Phelan and Johnson by Dr. Kenneth R. Duzan, and the report was offered in evidence without objection. The report reads as follows:

"The blood tests which you refer to were performed in my laboratory. The blood was drawn by Union County Coroner, Dr. John H. Pinson. The blood was given to me. I brought it to my laboratory, where the tests were run by Mr. Wayne Tubbs, my chief laboratory technologist, under my supervision.

The blood alcohol levels are reported as 75 mg.%

on Jack Wesley Johnson and 354.8 mg.% on Lois Ann Phelan. This means that there were 75 mg. of alcohol by weight in each 100 grams of blood of Johnson and 354.8 mg. per 100 grams in the blood of Phelan. At the time these tests were done, I believe that 100 mg.% was considered to be under the influence. 354.8 mg.% is a high level of blood alcohol and should indicate drunkeness."

The validity of the recovery by appellees in this case, of course, depends entirely upon whether Miss Phelan and Johnson were engaged in a joint enterprise at the time of the wreck. Appellees do not cite any authority relative to whether persons riding in an automobile, engaged in drinking intoxicants, are engaged in a joint enterprise, devoting their arguments rather to the fact that Phelan and Johnson were acting in concert in carrying out the purpose of having a good time and were accordingly embarked upon a joint venture. However, we have cases containing *dictum* to the effect that where persons are driving around, bent on pleasure, and have become inebriated from drinking, such parties are engaged in a joint enterprise. *Missouri Pacific Transportation Co.* v. *Howard,* 201 Ark. 6, 143 S. W. 2d 538, *Albritton, Admr.,* v. *C. M. Ferguson & Son,* 197 Ark. 436, 122 S. W. 2d 620. There are other cases involving a guest suing an alleged drunken driver; *Sparks* v. *Chittwood Motor Co.,* 192 Ark. 743, 94 S. W. 2d 359, *Lewis* v. *Chittwood Motor Co.,* 196 Ark. 86, 115 S. W. 2d 1072. Still others involve a passenger in a car with a drunken driver suing a third party; *Wilson* v. *Holloway,* 212 Ark. 878, 208 S. W. 2d 178. While the term "joint enterprise" is used in *Wilson* v. *Holloway supra,* a subsequent case, *Hurley* v. *Peebles,* 238 Ark. 739, 384 S. W. 2d 261 (November 30, 1964) explains that the above cited cases were really talking about "assumption of risk" rather than joint enterprise. The court said:

"A divided court in *Missouri Pacific Transportation Co.* v. *Howard,* 201 Ark. 6, 143 S. W. 2d 538, reversed a judgment in favor of appellee passenger because of erroneous instructions. Before discussing the instructions, the court stated that there was sharp con-

flict in the testimony, appellee's evidence being that the driver and passengers were sober, appellant's being that they were drunk, 'in the car . . . driving around on pleasure bent,' and then said, 'If this testimony is true [*i. e.,* all inebriated], the parties in the car were engaged in a joint enterprise, and the negligence of the driver would be imputed to each of them. *Albritton* v. *Ferguson* [supra].' To set the record straight, if the group, appellee, the driver and other passenger, were drunk, appellee may have 'assumed the risk' [*J. Paul Smith Co. c. Tipton,* 237 Ark. 486, 374 S. W. 2d 176], but the facts reflected in the *Missouri Pacific Transportation Co.* v. *Howard* opinion, *supra,* do not meet the criteria of joint enterprise as we understand them in the law of Arkansas. *Woodward* v. *Holliday, supra.*

In *Wilson* v. *Holloway,* 212 Ark. 878, 208 S. W. 2d 178, the court cites *Missouri Pacific Transportation Co.* v. *Howard, supra,* and *Albritton* v. *Ferguson, supra,* as authority for the 'drunken joint enterprise' theory, and then states:

'In the case of *Sparks* v. *Chitwood Motor Co.,* 192 Ark. 743, 94 S. W. 2d 359, Justice Mehaffy approved the following statement from Berry on Automobiles, § 5.181: 'If the occupants and driver of an automobile drink together and become intoxicated, each is as responsible as the driver for negligent driving, and none can recover injuries due to such negligence.'

The logic in this quotation is well-founded in the law of assumed risk and was ample basis for the holding in *Wilson* v. *Holloway* without reference to the dicta on 'drunken joint enterprise.' ''

We have been cited to no case where a passenger riding with a drunken driver, the negligence of the latter being the proximate cause of injuries to a third party, was held liable to such third party on the basis of joint enterprise. That, of course, is the situation that we have in the case before us, and it is at once apparent that there is a vast difference where one, riding with a drunken driver who causes a collision, institutes suit himself

for recovery, and where a third party, injured by the drunken driver, institutes suit only against the passenger. The last type of case requires far more evidence than the first because in the first instance we may well have the situation of a passenger assuming the risk of riding with one who is intoxicated.

We have held that to establish a joint enterprise, two fundamental and primary requisites must exist. In *Woodward* v. *Holliday,* 235 Ark. 744, 361 S. W. 2d 744, we said:

"This court has consistently held that in order for a joint enterprise to arise two fundamental and primary requisites must concurrently exist, to-wit: A community of interest in the object and purpose of the undertaking in which the automobile is being driven and an equal right to direct and govern the movements and conduct of each other in respect thereto. If either or both of these elements is absent, there is no joint enterprise. *Stockton* v. *Baker,* 213 Ark. 918, 213 S. W. 2d 896."

Without hesitancy, we hold that proof is lacking of the second requisite in the case before us. Admittedly, if joint enterprise were established, it had to be on the basis of the testimony of Tommy D. Roberts, whose deposition by interrogatories was taken by appellees. The deposition first recites that Roberts, 27 years of age, was working on November 2, 1965, for Wheeling Pipeline Company in El Dorado; that he saw Miss Phelan and Johnson at Folger's Truck Stop between 1:00 a.m. and 2:00 a.m.; that he knew, and had seen, both parties many times. Roberts said he was around the two until about 4:00 o'clock a.m., the three sitting at a counter in the cafe. The witness stated that when the two came to Folger's, Lois Ann Phelan was driving "and almost ran into the cafe where I was sitting. She was driving too fast when she turned into the parking lot and skidded up to the door". Roberts said that the three just carried on regular conversation, the two mentioning that they had been "to a party but didn't say where the party was". According to Roberts, Johnson "appeared to be slightly tight". When asked if Johnson was drunk or

sober, he replied "drunk". When asked about the appearance of Miss Phelan the witness stated "she was really drunk". Roberts said that from his observation, Johnson was "not capable of driving a car safely" and that Miss Phelan "wasn't capable". Pertinent portions of the deposition are as follows:

"(a) Did Jack Wesley Johnson and Lois Ann Phelan talk or have any discussions?

A. Yes, they were talking together and to me.

(b) Did both of them participate in the talks or discussions?

A. Yes.

(c) Did they talk about where they were going or what they were going to do? If so, state fully and in detail what each said.

A. Yes. They said they were going to El Dorado, Arkansas.

(d) Was any food or drink ordered by either of or both? If so, state fully and in detail who placed the order and who paid for the order.

A. They both placed an order for coffee and Jack Wesley Johnson paid for the order.

(e) Did either or both play the music machine, and if so, state whose idea or suggestion it was, who made the selections and who put the money in the machine?

A. They both played the music machine—she wanted to play it and he put the money in.

(f) State fully and in detail any other activity, discussion or agreements you heard or observed between Jack Wesley Johnson and Lois Ann Phelan.

A. They just drank coffee and played the music machine.

(g) In all of the talks, discussion and activities, which you observed between or by Jack Wesley Johnson and Lois Ann Phelan, did Jack Wesley Johnson participate in such talks, discussions and activities less, equally or more than Lois Ann Phelan?

A. Less."

Appellees argue that the evidence of Roberts constitutes substantial evidence that the parties were engaged in a joint enterprise, there being a clear showing of a community of interest in the subject and purpose of the undertaking. We agree that the evidence could be said to show that the two were at Folger's having a good time, had been to a party together, were drunk, were not capable of driving an automobile safely, and were fixing to go to El Dorado, Arkansas (though the purpose of the trip was never mentioned).

Appellees then state:

"The following evidence shows that Jack Wesley Johnson and Lois Ann Phelan, had an equal right to direct and govern the movements and conduct of each other—

(1) Both of them were drunk:

(2) Both of them participated in the talks or discussions;

(3) Both of them talked about where they were going and what they were going to do, specifically, that they were going to El Dorado, Arkansas.

(4) Both of them placed an order for coffee and Johnson paid for it;

(5) Both of them played the music machine. Miss Phelan wanted to play it and Mr. Johnson put the money in the machine.

(6) They were partying together."

We are unable to agree with this contention, nor with the reasoning employed for the fact that both were drunk and participated in the discussions certainly did not mean that they were on a joint enterprise. We daresay many people become drunk and talk without being on a joint enterprise. Nor do we see any significance that both ordered coffee and Johnson paid for it, or that Miss Phelan wanted the music machine played, and that Johnson put the money in the machine. Under such circumstances, the male generally pays for the coffee, and would normally place the money for the music in the music box. We cannot perceive how any of the facts mentioned by appellees establish in Johnson the right to equal control of Miss Phelan's automobile. For a discussion of drinking drivers, and drinking passengers, see *Deposit Guaranty Bank & Trust Company* v. *Burton,* 380 F. 2d 346 (1967), where the United States Court of Appeals for the Sixth Circuit reversed judgments which had been obtained on a theory of joint enterprise.

Of course, if Johnson had owned the Mercury automobile that Miss Phelan was driving, we would have a different situation, for in such event, he clearly would have had to right to control the use of the vehicle. But any finding of the right of joint control of the automobile would, under the proof before us, be based entirely upon speculation; in fact, it would be just as easy to speculate that Johnson requested Miss Phelan to permit him to drive, but she, as many who are inebriated, felt that she was perfectly capable of operating the automobile. It is apparent from what has been said that we find no substantial evidence to support the verdict, and the judgment is accordingly reversed and dismissed.

It is so ordered.